**MORT KESHIN & COMPANY, INC., Appellant,**

v.

**HOUSTON CHRONICLE PUBLISHING COMPANY, Appellee.**

No. 14–98–00922–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 29, 1999.

Gary F. Cerasuolo, Houston, for appellants.

Suzanne W. Ross, James E. Essig, Houston, for appellees.

Panel consists of Justices YATES, FOWLER, and FROST.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellant, Mort Keshin & Company, Inc. (Mort Keshin), by this interlocutory appeal, challenges the trial court's denial of its special appearance. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(7) (Vernon Supp.1998). In four points of error, Mort Keshin claims the trial court erred in denying its special appearance. We affirm.

## I. Background

Mort Keshin is an advertising agency located in New York. Western Pacific Airlines hired Mort Keshin in 1997 to obtain advertising space in Houston. Accordingly, Mort Keshin contacted appellee, the Houston Chronicle Publishing Company (the Chronicle), the owner of a daily newspaper published in Houston. The Chronicle provided in its newspaper the advertising Mort Keshin sought and then sent an invoice to Mort Keshin for the advertising. Mort Keshin did not pay the invoice and thereafter, the Chronicle sued Mort Keshin, seeking the amount due for the advertisements. Mort Keshin filed a special appearance, asserting that it lacked the requisite minimum contacts to confer personal jurisdiction on the trial court. The trial court denied the special appearance.

## II. Standard of Review

The plaintiff has the initial burden of pleading sufficient allegations to bring the nonresident defendant within the provisions of the Texas long-arm statute. *See Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 633 (Tex.App.-Dallas 1993, writ denied). At the special appearance hearing, the nonresident defendant bears the burden of negating all bases of personal jurisdiction. *See National Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 772 (Tex.1995). If the plaintiff does not plead jurisdictional allegations, *i.e.,* that the defendant has committed any act in Texas, the defendant can satisfy its burden by presenting evidence that it is a nonresident. *See Hotel Partners,* 847 S.W.2d at 634.

Whether the court has personal jurisdiction over a nonresident defendant is a question of law, but the proper exercise of such jurisdiction is sometimes preceded by the resolution of underlying factual disputes. *See Conner v. Conti-Carriers & Terminals, Inc.,* 944 S.W.2d 405, 411 (Tex.App.-Houston [14th Dist.] 1997, no writ). Generally, the standard of review for determining the appropriateness of the resolution of those facts is the factual sufficiency of the evidence review. *See id.* (citing *Hotel Partners,* 847 S.W.2d at 632). But, if the trial court makes findings of fact and conclusions of law, they are binding on this court, unless challenged on appeal. *See Hotel Partners,* 847 S.W.2d at 632. As the trier of fact, the trial court may draw reasonable inferences from the evidence. *See id.* We may not disregard the trial court's findings of fact on appeal if the record contains some evidence to support them. To be disregarded, the findings must be so contrary to the overwhelming weight of the evidence as to be manifestly wrong. *See id.*

Here, the trial court made findings of fact, which Mort Keshin challenges. Therefore, we will analyze the trial court's findings to determine if there is some evidence of probative value to support them.

### III.   Texas Long–Arm Statute

■ A Texas court may exercise jurisdiction over a nonresident if two conditions are satisfied. First, the Texas long-arm statute must authorize the exercise of jurisdiction. Second, the exercise of jurisdiction must be consistent with federal and state constitutional guarantees of due process. *See Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990).

■ The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident defendant who does business in Texas. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). While the statute enumerates several specific acts constituting "doing business," it also includes any "other acts that may constitute doing business." *See Schlobohm,* 784 S.W.2d at 357.[1] The "doing business" requirement permits the statute to reach as far as the federal constitutional requirements of due process will allow. *See Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). Therefore, we need only consider whether the assertion of personal jurisdiction over Mort Keshin is consistent with the requirements of due process. *See id.; Reyes v. Marine Drilling Cos.,* 944 S.W.2d 401, 404 (Tex.App.-Houston [14 th Dist.] 1997, no writ).

■ Due process consists of two components: (1) whether the nonresident defendant has purposefully established "minimum contacts" with the forum state; and

(2) if so, whether the exercise of jurisdiction comports with "fair play and substantial justice." *See Guardian Royal Exchange,* 815 S.W.2d at 226 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

### IV.   Due Process

### A.   Minimum Contacts Analysis

■ Under the minimum contacts analysis, we must determine whether the nonresident defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of the state's laws. *See Reyes,* 944 S.W.2d at 404 (citing *Burger King Corp.,* 471 U.S. at 474–75, 105 S.Ct. 2174). A nonresident defendant who has purposefully availed itself of the privileges and benefits of conducting business in the forum state has sufficient contacts with the forum to confer personal jurisdiction on the court. *See CSR. Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996). The purposeful availment requirement insures that the nonresident's contact results from its purposeful contact, not the unilateral activity of the plaintiff or a third party. *See Guardian Royal Exchange,* 815 S.W.2d at 227.

■ In determining whether a nonresident defendant has purposefully established minimum contacts with the forum state, "foreseeability" is a significant consideration. Although not an independent component of the minimum contacts analysis, foreseeability is implicit in determining whether there is a "substantial connection" between the nonresident defendant and the forum state. If a nonresident, by its actions or conduct, has purposefully

---

1.   Section 17.042 states:
  In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
  (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

  (2) commits a tort in whole or in part in this state; or
  (3) recruits Texas residents, directly or through an intermediary located in the state, for employment inside or outside this state.

availed itself of the state and the protections of the state's law, it has established a substantial connection with the state and subjected itself to the state's jurisdiction. *See Conner*, 944 S.W.2d at 410 (citing *Guardian Royal Exchange*, 815 S.W.2d at 226–27).

■ The nonresident defendant's contacts can give rise to two types of jurisdiction. The first is specific jurisdiction, which is established when the plaintiff's cause of action arises out of, or relates to the nonresident defendant's contacts with the forum state. *See id.* The defendant's activities must have been purposefully directed toward the forum state. *See Guardian Royal Exchange Assur., Ltd.,* 815 S.W.2d at 228. The minimum contact analysis focuses on the relationship among the defendant, the forum, and the litigation. *See id.*

■ The second type of jurisdiction is general jurisdiction, which is established by the defendant's continuous and systematic contacts with the forum. These contacts permit the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from, or relate to the defendant's activities conducted within the forum state. *See CSR Ltd.,* 925 S.W.2d at 595. Under general jurisdiction, the minimum contacts analysis is more demanding, requiring a showing of substantial activities within the forum state. *See Schlobohm,* 784 S.W.2d at 357.

■ In its first point of error, Mort Keshin claims the Chronicle failed to plead that Mort Keshin committed any act in Texas and therefore, Mort Keshin can satisfy its burden by presenting evidence that it is a non-resident. *See Hotel Partners,* 847 S.W.2d at 634. To this end, Mort Keshin asserts it (1) is not a Texas corporation, (2) is not required to maintain and does not maintain a registered agent for service in Texas, (3) does not maintain a place of business in Texas, (4) and has no employees, servants, or agents in Texas.

The Chronicle's petition sets forth the facts establishing the parties' contract and Mort Keshin's failure to pay. First, the petition claimed that, "All or part of the cause of action complained of herein occurred in Harris County, Texas, therefore, jurisdiction is proper in the State of Texas ...." Second, the petition alleges that Mort Keshin purchased from the Houston-based Chronicle advertisements, which the Chronicle provided to Mort Keshin. The Chronicle also attached as an exhibit to the petition an invoice describing the advertisements. In sum, the Chronicle's petition sufficiently sets forth jurisdictional allegations to bring Mort Keshin within the provisions of the Texas long-arm statute. Consequently, we overrule Mort Keshin's first point of error.

■ In its second point of error, Mort Keshin claims that it was acting as agent for Western Pacific. When an agent negotiates a contract for its principal in Texas, it is the principal who does business in this state, not the agent. *See Ross F. Meriwether & Assoc., Inc. v. Aulbach,* 686 S.W.2d 730, 731 (Tex.App.-San Antonio 1985, no writ). Moreover, because the agent has not entered into a contract and has not done any business in Texas, he has not done any act or consummated any transaction in Texas. *See id.*

In support of its opposition to Mort Keshin's special appearance, the Chronicle presented an "Application for Credit and Recognition as an Advertising Agency" (credit application), and "Advertised Billing Authorization" (billing authorization), both signed by Mort Keshin. Under the credit application, Mort Keshin agreed to pay the Chronicle for the advertisements placed in the newspaper: "The undersigned hereby makes application to The Houston Chronicle Publishing Company for credit and application as an advertising agency ... The undesigned assumes financial responsibility for all advertising it places for its clients and agrees to pay The Houston Chronicle Publishing Company promptly according to their credit terms at

their offices in Houston, Harris County, Texas should credit be extended...." The credit application does not refer to Western Pacific.

Similarly, the billing authorization states, "The undersigned ... jointly and severally, hereby agree to pay the Houston Chronicle ...." Although the advertising manager for Western Pacific signed the billing authorization, so too did Mort Keshin as "Advertising Agency," agreeing to accept liability for payments.

By accepting responsibility for payment of the advertisements, Mort Keshin, in fact, contracted with the Chronicle for performance in Houston, thereby purposefully establishing the requisite minimum contacts to establish specific jurisdiction. Mort Keshin's second point of error is overruled.

█ In its third point of error, Mort Keshin asserts that even if the credit application and billing authorization could support personal jurisdiction, these contracts no longer have legal effect because they were subsumed in the "Annual Inch Contract" entered into between the Chronicle and Western Pacific. In support of this contention, Mort Keshin relies on *Runnells v. Firestone*, 746 S.W.2d 845 (Tex.App.-Houston [14 th Dist.] ), *writ denied*, 760 S.W.2d 240 (Tex.1988) (per curiam). Aside from the fact that *Runnells* is easily distinguished from this case, as the Chronicle points out, there is one more important reason Mort Keshin's argument fails. The purpose of this proceeding is not to determine ultimate liability, but simply to assess whether Mort Keshin should be forced to respond to suit in Texas. *See Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex.1987). Consequently, it is inappropriate for us to consider if the Annual Inch Contract has subsumed the credit application or billing authorization. Mort Keshin's third point of error is overruled.

**B. Fair Play and Substantial Justice**

█ Once it has been determined that the nonresident defendant purposefully established the requisite minimum contacts with the forum state, those contacts are evaluated in light of other factors to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice. *See Guardian Royal Exchange*, 815 S.W.2d at 228. These factors include (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See id.* (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Because the minimum contacts analysis encompasses so many considerations of fairness, it is unlikely that the exercise of jurisdiction will fail the fair play analysis. *See Schlobohm*, 784 S.W.2d at 357–58. We conduct the fair play analysis, however, because "the law makes it clear that this analysis is separate and distinct from the minimum contacts issue." *Id.* at 358.

█ In its fourth point of error, Mort Keshin contends that the exercise of jurisdiction over it would offend the notions of fair play and substantial justice. It states that it is a New York corporation hired by Western Pacific to locate advertising space in Houston, for which Western Pacific agreed to pay the Chronicle, but failed to do so. According to Mort Keshin, because it received no consideration from the Chronicle, being hailed into a Texas court to defend this suit offends fair play and substantial justice. Whether the underlying contracts are supported by consideration goes to the question of liability for breach and not the question of jurisdiction. *See Zac Smith & Co.*, 734 S.W.2d at 666.

In any event, Texas has an interest in adjudicating claims based on contracts to be performed in Texas. Mort Keshin contacted the Chronicle regarding advertising space for its client. Mort Keshin signed two contracts, under which it agreed to assume financial responsibility for payment to a Texas entity, in Texas. Moreover, Mort Keshin expected to earn a fee based upon its contacts with Texas. Therefore, it cannot be said that requiring Mort Keshin's presence here to defend this suit offends the traditional notions of fair play and substantial justice. Mort Keshin's fourth point of error is overruled.

We do not find the trial court erred in overruling Mort Keshin's special appearance. Accordingly, the judgment of the trial court is affirmed.