COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-05-059-CV

 

 

SKEET HOOKS AND WIFE, LINDA                                         APPELLANTS

HOOKS, D/B/A FLOORS AND
WINDOWS PLUS

 

                                                   V.

 

CARPETON MILLS, INC.                                                          APPELLEE

 

                                              ------------

 

            FROM THE 67TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

I.
Introduction

 

Appellants Skeet and Linda Hooks, d/b/a Floors
and Windows Plus, (collectively Appellants) bring this interlocutory appeal
from the trial court=s order granting Appellee
Carpeton Mills, Inc.=s special appearance.  See Tex.
R. Civ. P. 120a; Tex. Civ. Prac.
& Rem. Code Ann. ' 51.014
(Vernon Supp. 2005).  We will affirm.








II. Standard of Review

Whether a court has personal jurisdiction over a
defendant is a question of law, which we review de novo.  BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 794 (Tex. 2002) (disapproving of abuse of discretion standard of
review).  But proper exercise of personal
jurisdiction must sometimes be preceded by resolution of underlying factual
disputes, typically whether a defendant has sufficient contacts with
Texas.  See Botter v. Am.
Dental Ass'n, 124 S.W.3d 856, 861 (Tex. App.CAustin
2003, no pet.).  When the trial court
makes findings of fact following a special appearance hearing, they are binding
on this court unless challenged on appeal pursuant to ordinary
insufficiency-of-the-evidence claims.  Id.;
Mort Keshin & Co. v. Houston Chronicle Publ=g Co., 992
S.W.2d 642, 645 (Tex. App.CHouston
[14th Dist.] 1999, no pet.); Hotel Partners v. KPMG Peat Marwick, 847
S.W.2d 630, 632 (Tex. App.CDallas
1993, writ denied).  In making such
findings of fact, the trial judge may draw reasonable inferences from the
evidence presented.  Hotel Partners,
847 S.W.2d at 632.         








Here, following the special appearance hearing,
the trial court made findings of fact.[2]  Appellants do not challenge these findings on
appeal; they instead contend that the trial court misapplied the law to the
facts it found. Accordingly, the unchallenged facts found by the trial court
are binding upon this court, and we utilize them to recite the factual
background set forth below.  See Royal
Mortgage Corp. v. Montague, 41 S.W.3d 721, 730 (Tex. App.CFort
Worth 2001, no pet.), disapproved of on other grounds, Michiana Easy Livin'
Country, Inc. v. Holten, 168 S.W.3d 777, 778-79 (Tex. 2005).

III. Factual Background

Appellants are residents of Texas doing business
in Texas.  Carpeton is a Georgia
corporation that manufactures and sells carpet in Georgia.  Couture Carpet International is a Texas
company that represents several carpet manufacturers, including Carpeton, and
acts as an independent contractor for these manufacturers.  Couture represents Carpeton in North Texas
and Oklahoma. 








One day Appellants showed some carpet to Bret
McLaughlin, a subagent of Couture, and asked whether McLaughlin knew of a
company that could replicate the carpet for a lower price.  McLaughlin took samples of the carpet to
Larry Huddleston, the owner of Couture, and asked Huddleston about the
possibility of replicating the carpet. 
Huddleston decided that, of all the manufacturers Couture represented,
Carpeton would most likely be able to replicate the carpet.  Huddleston mailed Carpeton the carpet sample
and asked Carpeton if it could produce similar carpet at a cheaper price.  Carpeton produced the carpet and mailed
samples back to Couture.  McLaughlin
showed the samples to Appellants, who decided that one was acceptable.    

Evidence presented established Carpeton=s
standard procedure for processing an order. 
A customer would order carpet through Couture or another independent
sales representative; Couture or another independent sales representative would
then place the order with Carpeton. 
Carpeton would process the order in Georgia and send an invoice to the
customer directly.  The customer would
send payment to either Carpeton in Georgia or to Carpeton=s
factoring institution in North Carolina. 
Then, Carpeton would ship the carpet free on board (AF.O.B.@) Eton,
Georgia, and the customer would take title at that point.[3]  The customer would then determine where the
carpet was to be shipped.  








In the present case, the invoice provided for
payment by Appellants to be made to Carpeton=s
factoring institution in North Carolina. 
Although there is no evidence demonstrating whether Appellants made
payment to Carpeton in Georgia or via Carpeton=s North
Carolina factoring institution, it is undisputed that Appellants made payment
and that such payment occurred outside Texas. 
After taking title to the carpet in Eton, Georgia, Appellants directed
that portions of the carpet they purchased be shipped to four locations:  restaurants located in Nevada, Arizona, and
California.   

After receiving the carpet, Appellants filed the
instant suit against Carpeton, alleging that the carpet was defective.  Carpeton filed a special appearance, claiming
that Texas courts possessed neither general nor specific jurisdiction over it. 

The trial court initially denied Carpeton=s
special appearance after a hearing.  The
trial court later vacated that order and granted Carpeton=s
special appearance.  Based on its
findings of fact, the trial court concluded that Carpeton did not engage in
systematic and continuous activity in Texas sufficient to subject it to general
jurisdiction in Texas and was not subject to specific jurisdiction in
Texas.   

IV. Personal
Jurisdiction








The plaintiff bears the initial burden of
pleading sufficient allegations to bring a nonresident defendant within the
provisions of the long-arm statute.  BMC
Software, 83 S.W.3d at 793.  A
defendant who challenges a trial court=s
exercise of personal jurisdiction through a special appearance bears the burden
of negating all jurisdictional bases.  Kawasaki
Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985).  We rely on precedent from the United States
Supreme Court as well as our own state=s
decisions in determining whether a nonresident defendant has met its
burden.  BMC Software, 83 S.W.3d at
795.       A.  No General Jurisdiction








In their first issue, Appellants contend that the
trial court erred by granting Carpeton=s
special appearance because Carpeton subjected itself to general jurisdiction by
maintaining a defined marketing plan in Texas. 
Appellants point to fourteen Apurposeful
activities@ by Carpeton that, in
conjunction with its purported marketing plan, Appellants allege establish the
trial court=s general jurisdiction over
Carpeton, including the following: 
Carpeton divides Texas into several regions and assigns each of its
three Texas sales representatives to a specific geographic sales territory in
the state; Carpeton regularly provides the sales representatives with leads for
Texas customers and regularly sends correspondence to the representatives,
urging them to promote its products in Texas; North Texas has been the top
grossing national region for Carpeton in four of the last five years; and
Carpeton provides bonuses to the Texas sales representatives for selling its
products in Texas.    General jurisdiction
allows a forum to exercise jurisdiction over a defendant even if the cause of
action did not arise from or relate to a defendant=s
contacts with the forum.  Helicopteros
Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16, 104 S. Ct.
1868, 1872-73 (1984); Guardian Royal Exch. Assurance, Ltd. v. English China
Clays, P.L.C., 815 S.W.2d 223, 228 (Tex. 1991).  General jurisdiction is only present,
however, when a defendant=s contacts with a forum are Acontinuous
and systematic,@ a more demanding minimum‑contacts
analysis than specific jurisdiction. Guardian Royal, 815 S.W.2d at
228.  General jurisdiction is premised on
the notion of consent.  See Am. Type
Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 808 (Tex. 2002), cert.
denied, 537 U.S. 1191 (2003).  That
is, by invoking the benefits and protections of a forum=s laws,
a nonresident defendant consents to being sued there.  Id. 


When a nonresident defendant purposefully
structures transactions to avoid the benefits and protections of a forum=s laws,
the legal fiction of consent no longer applies. 
Id.  For general
jurisdictional purposes, we do not view each contact in isolation.  Id. at 809.  All contacts must be carefully investigated,
compiled, sorted, and analyzed for proof of a pattern of continuing and systematic
activity.  Id.; Schlobohm v.
Schapiro, 784 S.W.2d 355, 359 (Tex. 1990). 








In the present case, because Appellants allege that general
jurisdiction exists, we examine whether Carpeton met its burden of establishing
that its contacts with Texas were not continuous and systematic.  See Coleman, 83 S.W.3d at 807.  Carpeton is incorporated under Georgia law,
and its principal office and place of business are in Georgia.  Carpeton never conducted business in Texas,
had any business office or employee in Texas, owned any real property in Texas,
held a bank account in Texas, advertised in a Texas publication or journal, had
Texas telephone listings, or made unsolicited mailing to Texas customers.  Carpeton has never been issued a certificate
of authority to conduct business in Texas, and it never appointed a registered
agent for service of process in Texas. 
In the past twenty years, on two occasions two Carpeton representatives
made business-related trips to Texas.   













Carpeton never sold carpet in Texas.  All carpet orders were sent to Carpeton=s office
in Georgia for approval and acceptance, Carpeton made the decision to accept or
reject an order in Georgia, and it manufactured its carpet in Georgia.  After processing an order, Carpeton completed
the sale in Georgia, and the customer determined where the carpet would be
shipped.  Carpeton sold all its goods
F.O.B. Eton, Georgia.  The customer sent
payment to either Carpeton=s office
in Georgia or to Carpeton=s factoring institution in North
Carolina.  Finally, all of Carpeton=s Texas
sales representatives were independent contractors, not employees, of
Carpeton.  These facts all weigh against
a finding of general jurisdiction.  See
Bearry v. Beech Aircraft Corp., 818 F.2d 370, 376 (5th Cir. 1987) (holding
that nonresident who engaged in nationwide advertising and visited Texas
dealers on occasion was not subject to jurisdiction because it did not maintain
offices in Texas, have agents in Texas, or have control over the Texas
dealers); see also Michel v. Rocket Eng=g Corp., 45
S.W.3d 658, 676-77 (Tex. App.CFort
Worth 2001, no pet.) (holding that acts of independent contractors, whom
nonresident did not control, did not establish continuing and systematic contacts
between nonresident and Texas).          Appellants rely on Kawasaki Steel
and Giacomini v. Lamping to support their argument that Carpeton
subjected itself to general jurisdiction through its marketing activities in
Texas.  See Kawasaki Steel, 699
S.W.2d at 199; S.P.A. Giacomini v. Lamping, 42 S.W.3d 265 (Tex. App.CCorpus
Christi 2001, no pet.).  Unlike Carpeton,
however, the defendant in Kawasaki Steel maintained an office in Texas
to provide sales promotion, marketing research, and after-sales service to its
customers, and the existence of that office played into the court=s
jurisdictional holding.  See 699
S.W.2d at 201.  In Giacomini,
unlike here, the nonresident defendant shipped a large quantity of products
directly to a Texas distributor with intentions of serving the Texas market,
evidencing a Asubstantial, regular[,] and
continuing flow of products from [the nonresident] to [its Texas distributor]
with roughly 250,000 products being shipped directly to Texas, and a
substantial number of the products being regularly sold in Texas.@  42 S.W.3d at 274; see CSR Ltd., 925
S.W.2d at 595 (holding company headquartered in Australia, possessing no
offices in Texas, no employees in Texas, no bank accounts in Texas, that had
not solicited business in Texas, had not sent any correspondence to Texas, had
never owned property in Texas, and had never paid taxes in Texas not subject to
general jurisdiction in Texas).  Here,
Carpeton did not maintain an office in Texas, had no employees in Texas, had no
bank accounts in Texas, had not directly solicited business in Texas, and had
not and did not ship goods directly to Texas but instead transferred title to
the carpet to the consumer in Georgia. 
Thus, Kawasaki Steel and Giacomini=s
holdings that the trial court possessed general jurisdiction over the
nonresident defendants are not applicable here.








Additionally, both Kawasaki Steel and Giacomini
predate the Texas Supreme Court=s
decision in Coleman.  See Coleman, 83
S.W.3d at 801.  In Coleman, a
nonresident defendant advertised in national and international journals, sold
products to Texas residents for at least eighteen years, served as a repository
for Texas researchers, contracted with a Texas medical center, and signed a
repository contract in Maryland.  Id.
at 807.  The nonresident defendant in Coleman
performed all the services related to the contract in Maryland and sent the
goods F.O.B. Maryland.  Id. at
807-08.  The corporation also purchased
over $350,000 in supplies from thirty-three Texas vendors, and the corporation=s
representatives attended five conferences in Texas.  Id. at 808.  Thus, the company unquestionably had contacts
with Texas, but the supreme court nonetheless held that no pattern of
continuing systematic activity existed by the company in Texas.  Id. at 809.  Interestingly, the supreme court expressly
noted that the fact that title to the goods passed to purchasers outside Texas
weighs against a finding that Texas acquired jurisdiction.  Id. 









Here, just as in Coleman, Carpeton
unquestionably had contacts with Texas.  See
id. at 809.  Here, just as in Coleman,
Carpeton structured its transactions to avoid the benefits and protections of
Texas law.  Here, just as in Coleman,
Carpeton passed title to the goodsCthe
carpetCoutside
of Texas.  Here, Couture=s sales
representatives and other independent sales representatives acted as
independent contractors for Carpeton, the Couture sales representatives were
not exclusive representatives of Carpeton products (they also represented
several other manufacturers), and Carpeton did not exercise control over the
Couture sales representatives.[4]  See Bearry, 818 F.2d at
376.  The present facts are more
compelling than the facts in Coleman, and based on the trial court=s fact
findings, we conclude that Carpeton=s
contacts with Texas were neither substantial nor systematic and
continuous.  See Guardian Royal,
815 S.W.2d at 228.  Thus, we hold that
Carpeton has not subjected itself to general jurisdiction in Texas courts.  We overrule Appellants= first
point. 

B. No Specific Jurisdiction over Carpeton

In their second point, Appellants contend that
Carpeton subjected itself to specific jurisdiction.  Appellants allege that specific jurisdiction
exists because Carpeton shipped carpet samples to Texas on numerous occasions
for Appellants= inspection and approval,
Carpeton=s sales
representatives made numerous personal visits to Appellants= place
of employment regarding their order, Carpeton paid its sales representative a
commission based on the sale to Appellants, and Carpeton sent invoices to Texas
and accepted payment from Appellants via a check drawn on a Texas bank.  













For a court to exercise specific jurisdiction
over a nonresident defendant, two requirements must be met:  (1) the defendant=s
contacts with the forum must be purposeful, and (2) the cause of action must
arise from or relate to those contacts.  Guardian
Royal, 815 S.W.2d at 227.  When
specific jurisdiction is asserted, the minimum contacts analysis focuses on the
relationship among the defendant, the forum, and the litigation.  Id. at 228.   It is well-established that a single contract with a Texas
resident does not automatically subject a nonresident defendant to jurisdiction
in Texas.  Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 478, 105 S. Ct. 2174, 2185 (1985) (AIf the
question is whether an individual's contract with an out-of-state party alone
can automatically establish sufficient minimum contacts in the other party's
forum, we believe the answer clearly is that it cannot.@).  Moreover, when the entire substance of the
contract is performed outside Texas, this factor weighs against a finding of
specific jurisdiction.  See, e.g.,
Blair Commc=ns, Inc. v. SES Survey Equip.
Servs., Inc., 80 S.W.3d 723, 729-30 (Tex. App.CHouston
[1st Dist.] 2002, no pet.) (holding nonresident defendant that performed entire
contract outside Texas was not subject to specific jurisdiction even though it
initiated contract discussions with a Texas resident, entered into a contract
with Texas resident, and made payment in Texas); 3-D Elec. Co. v. Barnett
Constr. Co., 706 S.W.2d 135, 143-44 (Tex. App.CDallas
1986, writ ref=d n.r.e.) (holding nonresident
defendant not subject to specific jurisdiction after entering into contract
with Texas plaintiff over the telephone, sending correspondence to plaintiff in
Texas, and making payments in Texas).         In the present case, the trial court
found that the transaction at issue was performed in Georgia, that the order
was placed in Georgia, and that Carpeton accepted and processed the order
there.  Carpeton shipped the carpet
F.O.B. Eton, Georgia, transferring title from Carpeton to Appellants in
Georgia. Carpeton did not deliver or install the carpet in Texas.  Appellants made payment outside Texas.  These findings demonstrate that Carpeton did
not purposefully avail itself of the privilege of conducting activities within
Texas and did not invoke the benefits and protections of our laws.  See Burger King, 471 U.S. at 475-76,
105 S. Ct. at 2183-84.  

Appellants nonetheless contend that this court=s
opinion in Bissbort v. Wright Printing & Publ=g Co.
supports their contention that Carpeton is subject to specific
jurisdiction.  801 S.W.2d 588 (Tex. App.CFort
Worth 1990, no writ).  In Bissbort,
the nonresident defendant initiated negotiations with the Texas plaintiff,
executed and returned a contract that required payment in Texas, and wired
payment to Texas.  Id. at
589.  Here, Carpeton did not initiate
negotiations with Appellants; instead, Appellants went to a third party,
Couture, who acted as the middleman between Appellants and Carpeton and who
solicited Carpeton to manufacture the carpet at issue.  













We are also not persuaded that the facts that
Appellants point to compel the conclusion that Carpeton is subject to specific
jurisdiction.  First, Appellants allege
that Carpeton sent carpet samples to Texas on numerous occasions, but the
record shows that Carpeton twice sent samples to Couture in Texas for
inspection.  These attenuated acts are
insufficient to confer specific jurisdiction over Carpeton.  See Guardian Royal, 815 S.W.2d at 226;
see also 3-D Elec. Co., 706 S.W.2d at 143-44 (holding that specific
jurisdiction did not exist even though nonresident defendant sent
correspondence to plaintiffs in Texas). 
The next two facts recited by Appellants address Couture=s
actions in Texas, but Appellants did not challenge the trial court=s
finding that Couture was an independent contractor.  Thus, Couture=s
actions cannot be a basis for personal jurisdiction over Carpeton.  See Bearry, 818 F.2d at 376 (holding
that actions of Texas dealers, who were independent contractors, could not be
imputed to nonresident for jurisdictional purposes); see also Coleman v.
Klockner & Co. AG, No. 14-04-00118-CV, 2005 WL 1981283, at *7 (Tex.
App.CHouston
[14th Dist.] Aug. 18, 2005, no pet.) (AThe
distinction between an independent contractor and an agent is important to the
jurisdictional inquiry because the actions of an independent contractor by
themselves are not sufficient to subject a [nonresident] corporation to the
jurisdiction of the forum state.@).  Appellants claim that they paid Carpeton with
a check drawn on a Texas bank, but this factual contention is not in
evidence.  Carpeton did send an invoice
to Appellants in Texas, stating that shipment was F.O.B. Eton, Georgia, but
this action alone does not constitute sufficient contact with Texas to create
specific jurisdiction over Carpeton.  See
Arth Brass & Aluminum Castings, Inc. v. Harsco Corp., No.
13-03-00323-CV, 2004 WL 103126, at *3, 6 (Tex. App.CCorpus
Christi Jan. 23, 2004, no pet.) (mem. op.) (holding that nonresident lacked
contacts necessary for specific jurisdiction even though nonresident defendant
sent invoice to Texas stating that shipment was AF.O.B.
Cleveland@); see also 3-D Elec. Co.,
706 S.W.2d at 143-44 (holding that sending payment to Texas was
insufficient contact for jurisdiction). 
After reviewing the record, we conclude that Carpeton did not
purposefully establish sufficient contacts with Texas.  See Guardian Royal, 815 S.W.2d at
227.  Thus, we hold that Carpeton has not
subjected itself to specific jurisdiction in Texas.  We overrule Appellants= second
point.

V. Conclusion

We overrule both of Appellants= points
and affirm the trial court=s order
granting Carpeton=s special appearance.

 

 

SUE WALKER

JUSTICE

 

PANEL B:    CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

 

DELIVERED: December 22, 2005

 

 

 

 

 

 

 

 








 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

APPENDIX A

 

 

 

 

 

 

 

 

 

 

 

 

 

 








 

 

 

 

 

In
the present case, the trial court made the following findings of fact:

 

1. Carpeton is a corporation incorporated under the laws of the State
of Georgia and has its principal office and place of business in Murray County,
Georgia.

 

2. Carpeton is a resident and citizen of the State of Georgia and is
not a resident or citizen of the State of Texas.

 

3. Carpeton was incorporated and commenced doing business in 1971.

 

4. Before and during the time of the transaction at issue in this
lawsuit, Carpeton=s principal business was
manufacturing and selling custom and stock patterned carpets.

 

5. Carpeton=s sole place of
manufacture was in Murray County, Georgia. 
Its sole office was at the same location.  It had no other offices or facilities of any
type.

 

6. Carpeton=s orders were submitted
to Carpeton=s office in Georgia for
approval and process.

 

7. Carpeton does not have and has never had an employee or any office
or other facility for the manufacture or sale of carpet or other products in
Texas.

 

8. Carpeton is not qualified to do business in the State of Texas[]
and is not required to apply for authority to do business in Texas.  Carpeton does not do business in the State of
Texas.

 

9. Carpeton has never actually or impliedly appointed the Secretary of
State of Texas or any other person or entity as its agent for service of
process in the State of Texas and has never had any reason for doing so.

 








10. Carpeton has never maintained any of its business records in the
State of Texas and has never maintained or defended any action, suit, or
administrative or arbitration proceeding in Texas.

 

11. Carpeton has never held meetings of directors or shareholders[] or
carried on any internal affairs activities in Texas.

 

12. Carpeton does not have and has never had any bank account or other
financial account with any financial institution in the State of Texas.

 

13. Carpeton does not and has never owned any real property in the
State of Texas.

 

14. Carpeton has never consciously or intentionally availed itself of
the privilege of conducting business or of any remedy in the State of
Texas.  It has never invoked the benefit
or protection of Texas laws[] and has never done any act with the intention of
subjecting itself to jurisdiction of the courts in the State of Texas.

 

15. Carpeton has not had the minimum contacts with the State of Texas
necessary to subject it to the jurisdiction of the courts of this State.

 

16. Carpeton has not sold any carpet in Texas.  All of Carpeton=s sales occur in Georgia.

 

17. Carpeton would receive telephone orders at its sole office in
Murray County, Georgia.

 

18. The decision whether to accept an order was made by Carpeton in
Georgia.  Payment for an order was . . .
made by sending payment [either] directly to Carpeton in Georgia[] or to
Carpeton=s bank/factor in North
Carolina.

 

19. Carpeton never received payment in Texas.

 








20. After Carpeton completes the sale of carpet in Georgia, the carpet
may be shipped by its owner to the location of the owner=s choice and
discretion.  All goods sold by Carpeton
were shipped F.O.B. Eton, Georgia.  A
review of the invoices produced in this case confirms that Carpeton has not
made any sales of carpet in Texas.  Texas
residents, however, have instructed the shipping company, which is not
Carpeton, on where their carpet was to be sent after it was sold in Georgia.

 

21. Carpeton did not advertise in Texas publications or journals.  It did not make unsolicited mailings to Texas
customers or have a Texas telephone listing.

 

22. In the last twenty years, the only visits to Texas by Carpeton=s representatives that
may be considered business-related were the following:  (1) a brief visit by Rick Odden, Director of
Marketing, approximately 5-6 years ago, and (2) Carolyn Butler=s visit to Texas for a
trade show in the early 1980s.  Carpeton
did not play a role in the selection of the trade show location.

 

23. Larry Huddleston (AHuddleston@), Mike Sheppard, Chuck Heilman, Patricia
Heilman, Ed Mindlin, and any employees or subagents thereof (collectively
referred to as the ASales Representatives@) were independent
contractors for Carpeton at all times.

 

24. In the carpet industry, it is common for carpet manufacturers and
dealers to utilize independent contractors to bring the two sides
together.  Carpeton used the Sales
Representatives for that purpose.

 

25. The Sales Representatives did not have a contract of employment
with Carpeton and have never been employees of Carpeton.

 

26. Carpeton has never paid the Sales Representatives on a salary
basis.  Carpeton paid them on a
commission basis.  They controlled their
own profitability and incurred the risk of not making money.  Carpeton was not required to withhold federal
income taxes for commissions paid the Sales Representatives.

 

27. Carpeton, by written or spoken words or conduct, did not authorize
any of the Sales Representatives to enter contracts in its behalf.








 

28. The Sales Representatives did not have authority to determine the
prices for standard and custom orders for Carpeton carpet.

 

29. Carpeton did not control the means or methods by which the Sales
Representatives conducted their respective businesses.  The Sales Representatives supplied their own
vehicle[s] and set their own schedule. 
Although they may be referred to in the carpet industry as Asales representatives,@ they are still
considered to be independent contractors[] and are not agents of any particular
manufacturer.

 

30. At all times, Carpeton treated the Sales Representatives as
independent contractors.

 

31. Huddleston operates his own carpet sales business, Couture Carpets
International, Inc. 

 

32. Huddleston controlled his own work schedule.

 

33. Huddleston controlled the aspects of his work.

 

34. Huddleston did not have a contract of employment with Carpeton.

 

35. Huddleston did not have the authority to determine the prices for
standard and custom order carpet.

 

36. Huddleston was a middleman, who brought the
parties together.    

 

37. The transaction at issue in the above-styled cause was performed
outside the State of Texas.

 

38. The order at issue was placed, processed, and accepted in Georgia.

 

39. [Appellants] made payment outside of Texas for the carpet at
issue.

 








40. Carpeton transferred title for the carpet to [Appellants] in
Georgia.

 

41. The carpet [Appellants] ordered from Carpeton was not delivered or
installed in Texas.

 

42. The carpet was shipped by third parties to Nevada, California, and
Arizona.

 

43. The exercise of jurisdiction over Carpeton would offend
traditional notions of fair play [and] substantial justice.

 

44. Attempting to haul Carpeton into a Texas Court based on such
alleged, incorrect, weak contacts, and the burden that it will impose on
Carpeton in having to defend the meritless allegations in Texas, would be
unfair and unjust.

 











[1]See Tex. R. App. P. 47.4.





[2]The trial court=s findings of fact are
attached as Appendix A.  





[3]AFree on board@ means that title to
property passes from the seller to the buyer at the designated F.O.B.
point.  See CSR Ltd. v. Link, 925
S.W.2d 591, 594 (Tex. 1996).





[4]One of the trial court=s unchallenged findings
of fact states that  A[a]lthough they [Couture=s sales representatives]
may be referred to in the carpet industry as >sales representatives,= they are still
considered to be independent contractors, and not agents of any particular
manufacturer.@