NUMBER 13-06-00367-CV


 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


PAUL C. TANG and 

STACY J. HAIGNEY, Appellants,


v.
 


EVANGELINA GARCIA and, 

KEITH LIVESAY Appellees.

 


On appeal from the County Court at Law No. 5 of 

Hidalgo County, Texas.

 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Vela


Memorandum Opinion by Chief Justice Valdez



 Appellants, Paul Tang and Stacy Haigney, appeal the trial court's denial of their
special appearance. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon Supp.
2006). They contend that (1) appellees, Evangelina Garcia and Keith Livesay, failed to
produce sufficient evidence to support the denial of their special appearance; (2) the trial
court erred in denying their special appearance; and (3) appellees' claims in the underlying
suit are moot because of the supreme court's decision in a related mandamus proceeding. 
We reverse and render.

I. BACKGROUND

 The underlying suit is a bill of review proceeding that is related to a personal injury
suit. On November 29, 2001, Garcia filed a personal injury suit against Burlington Coat
Factory Warehouse of McAllen, Inc. ("Burlington"). The trial court rendered a default
judgment in Garcia's favor on March 25, 2002. In September 2002, Garcia attempted to
execute on the judgment. Burlington filed a bill of review and sought mandamus relief. 
The debate over the default judgment's status was not settled until July 1, 2005, when the
supreme court declared the default judgment interlocutory. See In re Burlington Coat
Factory Warehouse of McAllen, Inc., 167 S.W.3d 827, 831(Tex. 2005) (orig. proceeding). 
While the mandamus petition concerning the default judgment was pending, Garcia filed
counterclaims in the bill of review proceeding against Burlington and two of Burlington's in-house attorneys, Tang and Haigney. Livesay entered the bill of review proceeding as an
intervenor against Burlington and Tang. Tang and Haigney each filed a special
appearance. (1) 

 Garcia's counterclaims sound in breach of contract, fraud, and wrongful injunction;
she sought damages, attorney's fees, interest, and court costs. Factually, Garcia alleged
the following:

 After the writ of execution had been served, [Burlington] and [Garcia] entered
into an agreement, where [Garcia] would cease the execution in exchange
for the full amount of the judgment. Tang and/or Haigney were the agents
for . . . Burlington who negotiated such settlement. However, at the time of
the agreement, [they] did not possess any present intent to comply. [Garcia]
complied with the terms of the agreement. However, [Tang and Haigney]
failed to comply. Instead of tendering the proceeds to [Garcia], as promised,
[Tang and Haigney] tendered the proceeds to the Hidalgo County's [sic]
Sheriff's Office.


Clerk's Record, Vol. 1, pg. 32. In asserting jurisdiction, Garcia contends that the amount
in controversy is within the court's jurisdictional limits, venue is proper in Hidalgo County
because her cause of action or part of it accrued in Hidalgo County, and the counterclaims
are compulsory. Clerk's Record, Vol. 1, pg. 31. Garcia also filed an affidavit, which
states that she is not financially able to litigate her case in New Jersey, where Tang and
Haigney work. 

 Livesay's plea in intervention identifies Burlington and Tang as the only counter-defendants. Clerk's Record, Vol. 1, pg. 135. Livesay asserts in the jurisdiction and
venue section of his plea that the amount in controversy is within the court's jurisdictional
limits, venue is proper in Hidalgo County because the counter-defendants' abusive
conduct, in part, occurred in Hidalgo County, and venue is also proper in Hidalgo County
because the court possesses jurisdiction over "the main case." Id. Livesay contends that
he was retained and paid by Garcia's trial counsel for services related to the personal injury
suit that ended in what was believed to be a default judgment. The factual allegations of
his plea include:

 Counter Defendants immediately breached their settlement agreement. 
They filed [the underlying] bill of review. Furthermore, they repeatedly lied
to both the Court of Appeals and to the Texas Supreme Court, claiming that
they filed a bond. No such bond has ever been filed. When Counter
Defendants found that [Livesay] had been paid what was justly owed to him,
Counter Defendants began a campaign of abuse and harassment. First,
there was no basis, either legal or factual, for requiring [sic] Livesay to return
any payment. Second, Counter Defendants attempted to serve Livesay with
process. No basis existed for such process. Such efforts were
unsuccessful. Third, Counter Defendants attempted to have findings made
against [Livesay], when [no] basis, factual, legal, or jurisdictional, existed.
Fourth, Counter Defendants attempted to have [Livesay] thrown in jail for a
debt, when the court was without jurisdiction, and in direct violation of the
provision of the Texas Constitution. . . . All of this caused [Livesay] harm and
grief. Naturally, there is the mental anguish associated with the threat of
being placed in jail for a debt which is not owed, in violation of the Texas
Constitution. Counter Defendants' conduct also placed a strain on
[Livesay's] marriage, such that [Livesay's] wife filed for divorce. 


Clerk's Record, Vol. 1, pg. 136-37. To support jurisdiction, Livesay filed an affidavit,
which states: 

 Counter Defendants attempted to have me become a guest in a Texas jail. 
This conduct was done intentionally; a party is not accident[ly] placed in jail
[sic]. Obviously, the effects of Counter Defendants' misconduct was felt by
me in Texas. I did not know whether I would have a sheriff at my front door
at any minute. I also did not know whether I would be raped in the Texas
prison. Likewise, I did not know how I would insure that my children had
food to eat.


Livesay asserted causes of action for abuse of process and "intentional infliction of mental
anguish;" he sought damages, interest, and court costs. Livesay supplemented his plea
in intervention to include violations of chapters 9 and 10 of the Texas Civil Practice and
Remedies Code, violations of rule 13 of the Texas Rules of Civil Procedure, and a
"common law action for frivolous pleadings and conduct." 

 The clerk's record contains an affidavit filed by Corcoran, Garcia's trial counsel. 
Clerk's Record, Supp. Vol. 1, pg. 5-7. Corcoran states that he was in the process of
executing what was then a final default judgment when Tang and Haigney contacted him
by telephone, offered to settle the judgment for funds rather than an execution on store
merchandise, promised to draft a settlement agreement, and pledged to immediately send
payment of the judgment to him. According to Corcoran's affidavit, "[Tang and Haigney]
were acting on behalf of Burlington Coat Factory; they were in charge of matters, as
opposed to [Burlington's] local attorney." Instead of forwarding the payment to Garcia's
counsel, Tang issued a check from a trust account to the Hidalgo County Sheriff's
Department. Shortly thereafter, Burlington filed a bill of review in the trial court and a
petition for a writ of mandamus in this Court.

 The clerk's record also contains affidavits filed by Tang and Haigney. Tang's
affidavit states that he is not a Texas resident, is employed as general counsel to
Burlington, had never spoken to Garcia or any of her attorneys, and had never reached a
settlement agreement with any of the litigants in the personal injury suit. His affidavit also
states that he does not have day-to-day contact with the underlying litigation and has
directed no action by Burlington's attorneys in this litigation of any kind, including the kind
of activities alleged by Livesay.

 Haigney's affidavit states that he is not a Texas resident, is employed as a senior
attorney in Burlington's legal department, and that he did not speak to Garcia or any of her
attorneys. Haigney acknowledged speaking to Deputy Andres Rios of the sheriff's
department regarding the deposit of funds in order to prevent Garcia's judgment from being
executed.

 The only physical evidence found in the record is a copy of a check made on Tang's
trust account payable to the Hidalgo County Sheriff's Office and a cover letter addressed
to Deputy Rios typed on Burlington Coat Factory Warehouse Corporation stationery. 

 The trial court denied Tang and Haigney's special appearance. This appeal ensued. 

II. APPLICABLE LAW

A. Standard of Review

 "Whether a court has personal jurisdiction over a defendant is a question of law." 
BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). On the
underlying standard, the "plaintiff bears the initial burden of pleading sufficient allegations
to bring a nonresident defendant within the provisions of the long-arm statute." Id. at 793. 
At that point, a "defendant challenging a Texas court's personal jurisdiction over it must
negate all jurisdictional bases." Id. We conduct a de novo review of the trial court's denial
of a special appearance. Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801,
806 (Tex. 2002). If we must review the facts underlying the legal conclusion, we review
those for legal and factual sufficiency. Marchand, 83 S.W.3d at 794. 

 If a trial court does not issue findings of fact and conclusions of law when ruling on
a special appearance (as in this case), we will assume that the court made all necessary
findings of fact that are supported by the evidence. Id. at 795. If the record includes the
reporter's and clerk's records, those implied findings may be challenged for legal and
factual sufficiency. Id. We will affirm the trial court's determination on any legal theory
supported by the evidence. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990).

B. Due Process & Personal Jurisdiction

1. The Texas Long-Arm Statute

 The Texas long-arm statute allows Texas courts jurisdiction over nonresident
defendants doing business in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon
1997). While the long-arm statute enumerates certain examples of doing business, it does
not provide an exclusive list. Id. ("In addition to other acts that may constitute doing
business, a nonresident does business in this state if . . . ." describing three acts); see also
Marchand, 83 S.W.3d at 795; Schlobohm v. Schapiro, 784 S.W.2d 355, 356-57 (Tex.
1990). The statute is construed as extending Texas courts' jurisdiction over nonresident
defendants as far as the federal constitutional requirement of due process permits. 
Marchand, 83 S.W.3d at 795.

2. Due Process & Minimum Contacts

 "The Due Process Clause of the Fourteenth Amendment limits the power of a state
court to render a valid personal judgment against a nonresident defendant." World-Wide
Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980). A Texas court's personal
jurisdiction over a nonresident defendant is constitutional when two conditions are met: (1)
the defendant has established minimum contacts with Texas, and (2) the exercise of
jurisdiction comports with traditional notions of fair play and substantial justice. Marchand,
83 S.W.3d at 795 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The
"touchstone" of the minimum contacts analysis is purposeful availment, i.e., that "the
defendant purposefully avails itself of the privilege of conducting activities within the forum
State, thus invoking the benefits and protections of its laws." Michiana Easy Livin' Country,
Inc. v. Holten, 168 S.W.3d 777, 784 (Tex. 2005) (quoting Hanson v. Denckla, 357 U.S.
235, 253 (1958)). 

 The purposeful availment analysis has three components. See Holten, 168 S.W.3d
at 785. First, the purposeful availment requirement ensures that a nonresident defendant's
contacts with the forum state resulting from the unilateral activities of another party or a
third person will not be the sole basis of haling that defendant into the jurisdiction. Burger
King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985); Holten, 168 S.W.3d at 785. Thus, we
look at only the defendant's contacts with the forum. Holten, 168 S.W.3d at 785. Second,
the contacts must be "purposeful" rather than random, isolated, or fortuitous. Rudzewicz,
471 U.S. at 462; Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984); Holten, 168
S.W.3d at 785. Third, the defendant must have "availed" itself of the jurisdiction by
seeking some benefit, advantage, or profit from the forum state so as to consent to suit
there. Holten, 168 S.W.3d at 785. Conversely, "a nonresident may purposefully avoid a
particular jurisdiction by structuring its transactions so as neither to profit from the forum's
laws nor be subject to its jurisdiction." Id.

3. Specific Jurisdiction

 Specific jurisdiction exists when the defendant's alleged liability "arises from or is
related to an activity conducted within the forum." Marchand, 83 S.W.3d at 796. In other
words, the cause of action must arise from, or relate to, the defendant's purposeful
contacts. Schexnayder v. Daniels, 187 S.W.3d 238, 243 (Tex. App.-Texarkana 2006, pet.
dism'd w.o.j.).

III. ANALYSIS

A. Garcia's Counterclaims & The Fiduciary Shield Doctrine

 In the special appearances, Tang and Haginey asserted that the fiduciary shield
doctrine precludes jurisdiction over them. They contend that they cannot be personally
liable for actions conducted by or on behalf of Burlington. 

 The fiduciary shield doctrine is a theory of liability that has been applied in a
jurisdictional context. See Siskind v. Villa Found. for Educ., Inc., 642 S.W.2d 434, 437-38
(Tex. 1982) (speaking in terms of "alter ego"). The doctrine shields a nonresident
defendant from suit in a forum state when his or her only contacts with that state are in a
representative capacity. See Cadle v. Graubart, 990 S.W.2d 469, 473 (Tex.
App.-Beaumont 1999, no pet.). We have previously noted that in applying the
doctrine,"courts will not hold individual officers, directors, or stockholders liable on the
obligations of a corporation except where it appears the individuals are using the corporate
entity as a sham to perpetrate a fraud, avoid personal liability, avoid the effect of a statute,
or in a few other exceptional situations . . . ." (2) J & J Marine, Inc. v. Le, 982 S.W.2d 918,
927 (Tex. App.-Corpus Christi 1998, no pet.). 

 In analyzing appellants' fiduciary shield doctrine argument that they were acting on
Burlington's behalf, our attention is drawn to the factual allegations and admissions found
in the pleadings. A judicial admission is a formal waiver of proof, usually found in
pleadings or the stipulations of the parties, that dispenses with the production of evidence
on an issue and bars the admitting party from disputing it. Mendoza v. Fidelity & Guar. Ins.
Underwriters, Inc., 606 S.W.2d 692, 694 (Tex.1980); De La Pena v. Elzinga, 980 S.W.2d
920, 922 (Tex. App.-Corpus Christi 1998, no pet.). This rule is based on the public policy
that it would be unjust to permit a party to recover after he has sworn himself out of court
by clear, unequivocal testimony. De La Pena, 980 S.W.2d at 922 (citing United States
Fidelity & Guar. Co. v. Carr, 242 S.W.2d 224, 229 (Tex. Civ. App.-San Antonio 1951, writ
ref'd)). Pleadings in a particular case, for purposes of use in that case, are regarded as
formal judicial admissions. Cameron County v. Velasquez, 668 S.W.2d 776, 782-83 (Tex.
App.-Corpus Christi 1984, writ ref'd n.r.e.) (on rehearing) (citations omitted). 

 In this case, Garcia made a consequential admission. According to Garcia's
counterclaim, "Tang and/or Haigney were the agents for . . . Burlington." (emphasis
added). Corcoran's affidavit states that, "[Tang and Haigney] were acting on behalf of
Burlington Coat Factory; they were in charge of matters, as opposed to [Burlington's] local
attorney." (emphasis added). Garcia's pleading and her attorney's affidavit conclusively
admit that Tang and Haigney were acting as "agents" or fiduciaries for Burlington. The only
physical evidence is a check made payable from Tang's trust account and a cover letter
typed on Burlington stationery-hallmarks of one acting in a fiduciary capacity. (3) Moreover,
the record contains no evidence that Tang and Haigney obtained some benefit, advantage,
or profit from this state so as to consent to suit here. Holten, 168 S.W.3d at 785
(explaining the third element of a purposeful availment analysis). 

 In this case, Garcia did not plead any facts raising personal liability against Tang
and Haigney. To the contrary, she chose to couch her claims against Tang and Haigney
in fiduciary terms. Tang and Haigney's fiduciary status is further evidenced by Garcia's
former trial attorney's sworn statement that Burlington's lawyers were acting as its agents. 
Garcia's factual allegations and jurisdictional evidence presents an extraordinarily unique
set of facts that compels the application of the fiduciary shield doctrine. The trial court
made a mistake of law in denying Tang and Haigney's special appearance as it applied to
Garcia's counterclaim and asserting jurisdiction over Burlington's foreign fiduciaries. 

B. Livesay's Plea in Intervention & Purposeful Availment

 Along with raising the fiduciary shield doctrine, Tang's special appearance contends
there is no evidence establishing his minimum contacts with Texas. Specifically, Tang
contends that he did not purposefully avail himself of the laws of this State. 

 When reaching a decision to exercise or decline jurisdiction based on the
defendant's alleged commission of a tort, the trial court should rely only upon the
necessary jurisdictional facts and should not reach the merits of the case. See Ring Power
Sys. v. Int'l De Comercio & Consultoria, S.A., 39 S.W.3d 350, 353 (Tex. App.-Houston
[14th Dist.] 2001, no pet.). "The purpose of a special appearance is not to determine
liability, but whether the actions alleged by a plaintiff are of a type that suggest a
defendant should expect to be subject to Texas jurisdiction." Mort Keshin & Co., Inc. v.
Houston Chronicle Publ'g Co., 992 S.W.2d 642, 648 (Tex. App.-Houston [14th Dist.] 1999,
no pet.) (emphasis added). 

 Tang's alleged contacts with this State are, according to Livesay, that "Counter
Defendants . . . repeatedly lied to both the Court of Appeals and to the Texas Supreme
Court," "began a campaign of abuse and harassment," "attempted to serve Livesay with
process," "attempted to have findings made against Livesay," and "attempted to have
Livesay thrown in jail." Livesay's affidavit, like his plea, continues the vague identification
of parties by asserting that "Counter Defendants attempted to have me become a guest
in a Texas jail." Tang swears in his affidavit that he does not have day-to-day contact with
the underlying litigation and that he did not direct Burlington's attorney to act as alleged by
Livesay. 

 Specific jurisdiction turns on the defendant's contacts with Texas, not on whether
those contacts were tortious. Holten, 168 S.W.3d at 791-92 (Texas Supreme Court
"disapproving of those opinions holding that . . . specific jurisdiction turns on whether a
defendant's contacts were tortious rather than the contacts themselves."). Livesay's plea
and affidavit do not specify which counter defendant "lied" to Texas courts, "began a
campaign of abuse and harassment," or "attempted" the actions alleged. Tang offered an
affidavit stating that he did not have day-to-day contact with the underlying litigation and
that he did not direct Burlington's attorney to partake in the activities alleged by Livesay. (4) 
Assuming Livesay intended to accuse Tang of every allegation in his plea, he does not
refer to a specific act committed, nor does he explain how or where the "attempted" actions
occurred. Livesay's vague accusations are entirely inadequate when measured by
Holten's requirement of physical facts. See Holten, 168 S.W.3d at 791 (noting that
business contacts are generally a matter of physical fact, while tort liability turns on what
the parties thought, said, or intended and cautioning judges to focus on physical facts
rather than accusations of a tort). Thus, Livesay has neither pleaded nor offered any
physical evidence of a purposeful act on Tang's part. 

 We find the record in the instant case completely devoid of any evidence supporting
jurisdiction over Tang based on Livesay's plea. Accordingly, we conclude that Tang has
negated all bases for an assertion of specific jurisdiction. The trial court erred in denying
Tang's special appearance as to Livesay's claims. Tang and Haigney's second issue is
sustained.

IV. CONCLUSION (5)

 Because Garcia admitted that appellants were acting in their fiduciary capacity and
Tang established that there was no evidence of his purposeful availment regarding
Livesay's allegations, we reverse the trial court's denial of the special appearance and
render judgment dismissing the claims against Tang and Haigney for want of jurisdiction. (6) 

 

 _______________________

 ROGELIO VALDEZ,

 Chief Justice

 

Concurring Memorandum Opinion 

by Justice Yañez.


Memorandum Opinion delivered and filed 

this the 2nd day of August, 2007. 

1. The trial court held a hearing where arguments were made, but no live testimony was taken. The
clerk's record contains affidavits by Garcia, Livesay, William Corcoran, Gracia's counsel who obtained the
default judgment, Tang, and Haigney. 
2. We are mindful that the fiduciary shield doctrine has not been used in a specific jurisdiction analysis. 
Brown v. General Brick Sales Co., 39 S.W.3d 291, 300 (Tex. App.-Fort Worth 2001, no pet.) (noting that
where intermediate appellate courts have applied some aspects of the fiduciary shield doctrine, they have
limited its application to jurisdictional claims based on the theory of general jurisdiction as opposed to specific
jurisdiction). We are also mindful that an agent is not protected from the exercise of specific jurisdiction if he
engages in tortious or fraudulent conduct, directed at the forum state, for which he may be held personally
liable. SITQ E.U., Inc. v. Reata Rest., Inc., 111 S.W.3d 638, 651 (Tex. App.-Fort Worth 2003, pet. denied);
see also Morris v. Kohls-York, 164 S.W.3d 686, 695 (Tex. App.-Austin 2005, pet. dism'd). 
3. The term "fiduciary capacity" is "not restricted to technical or express trusts, but includes also such
officers or relations as those of an attorney at law, a guardian, executor, or broker, a director of a corporation,
and a public officer." Black's Law Dictionary 753 (4th ed. 1951).
4. In the trial court, no objection was raised regarding Tang's affidavit. 
5. To the extent a motion for sanctions can be gleaned from Livesay's brief, said motion is hereby
denied. 
6. This relieves us from having to address Tang and Haigney's first and third issues, for their resolution
would not further affect the outcome of this appeal. Tex. R. App. P. 47.1.