# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO.03-03-00314-CV

**Kirk Lee Botter and Darla Botter, Individually and as Next Friend of Cody Wyatt Botter, a Minor Child, Appellants**

**v.**

**American Dental Association, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. GN203158, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING

## O P I N I O N

Appellants, Kirk Lee Botter and Darla Botter, individually and as next friend of Cody Wyatt Botter, a minor child, bring this interlocutory appeal challenging the district court's grant of special appearance to appellee, the American Dental Association (the "ADA"), a not-for-profit, voluntary, professional organization. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2003); *see also* Tex. R. Civ. P. 120(a). The district court found that it did not have personal jurisdiction over the ADA and issued findings of fact and conclusions of law supporting its decision. We affirm the district court's order granting the ADA's special appearance.

## BACKGROUND

The Botters sued the ADA, various other dental associations, her dentist, and dental product companies alleging that Cody Botter had suffered birth defects arising from four amalgam

fillings placed in his mother's mouth during her pregnancy with him. The Botters alleged that the fillings contained mercury, and that while pregnant with Cody, Darla Botter breathed mercury gases that emanated from the fillings. The Botters alleged that these gases caused Cody various medical problems. The Botters further alleged that the ADA sold and supported the use of amalgam fillings, through its seal of approval program and its publications, and that in fact the ADA prohibited dentists from warning patients about amalgam fillings through its code of ethics. The ADA filed a special appearance pursuant to Texas Rule of Civil Procedure 120(a), asserting that the Botters had failed to sufficiently plead allegations to assert either specific or general personal jurisdiction over it. *See* Tex. R. Civ. P. 120(a). The ADA is not a resident of Texas—its offices are located in Chicago, Illinois. It contends that the Botters have not shown that it had sufficient contacts with Texas to support personal jurisdiction. The district court granted the ADA's special appearance. *See id*. The Botters brought this interlocutory appeal challenging the district court's grant of special appearance. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8).

The Botters assert that the district court erred in granting the special appearance because the ADA is subject to both specific and general jurisdiction due to its substantial contacts with this state.[1]

---

[1] The Botters also specifically assert that the district court erred by: (1) not requiring the ADA to negate all of their allegations demonstrating personal jurisdiction; (2) refusing to consider their second amended petition in making its determination; and (3) making erroneous findings of fact and conclusions of law. As to the Botters' first specific issue, the ADA did not have to negate every allegation—it had to negate every basis of jurisdiction. Because we conclude that the Botters have not met their initial burden of pleading sufficient allegations to support personal jurisdiction in this case, the Botters' first specific issue is moot. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002) (citing *McKanna v. Edgar*, 388 S.W.2d 927, 930 (Tex.1965)). As to the Botters' second issue, the district court refused to consider the Botters' second amended petition

2

## STANDARD OF REVIEW

The existence of personal jurisdiction is a question of law, but proper exercise of that jurisdiction must sometimes be preceded by the resolution of underlying factual disputes. *Daimler-Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707, 715 (Tex. App.—Austin 2000, pet. dism'd w.o.j.). We determine the appropriateness of the district court's resolution of those disputes by an ordinary sufficiency-of-the-evidence review based on the entire record. *Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 411 (Tex. App.—Houston [14th Dist.] 1997, no writ). We will set aside a finding of the trial court only if it is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate*, 244

---

because it was filed after the special-appearance hearing. The Corpus Christi Court of Appeals, in a similar situation, has concluded: "[t]he meaning of the term 'pleadings' must be limited at least so as to exclude matters not filed prior to the special appearance hearing." *Frank A. Smith Sales, Inc. v. Atlantic Aero, Inc.*, 31 S.W.3d 742, 747 (Tex. App.—Corpus Christi 2000, no. pet.). We agree with our sister court. Accordingly, we conclude that the district court did not err by refusing to consider the Botters' second amended petition, and we will not consider the second amended petition in our review. In the Botters' third issue, the Botters specifically directed this Court to findings and conclusions they believed are erroneous in order to substantiate their claim that the district court's grant of special appearance was erroneous as a whole. When a court issues findings of fact we are to assume that they are valid unless they are challenged by the appellant, and when challenged we set aside a finding of the trial court only if the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *See In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951). Conclusions of law made by a district court are reviewed *de novo*. *See BMC Software Belgium, N.V*, 83 S.W.3d at 794. In this case, however, much of the evidence, proffered by the Botters, on which the district court may have relied was improper, as discussed below. Ultimately, we had to review the record without that evidence in our determination. Any of the findings made by the district court that this Court uses in its determination are addressed in the opinion because we have concluded that they are not so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. Because we affirm the district court's grant of special appearance, concluding that given the entire record, the Botters have not pled allegations sufficient to confer personal jurisdiction, we do not further analyze each of the Botters' specific points separately in this opinion.

S.W.2d 660, 661 (Tex. 1951); *Runnells v. Firestone*, 746 S.W.2d 845, 849 (Tex. App.—Houston [14th Dist.] 1988, writ denied). In reviewing such a point of error, we must consider and weigh all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence. *Ames v. Ames*, 776 S.W.2d 154, 158-59 (Tex. 1989); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In considering the evidence, if a finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the finding should be set aside, regardless of whether some evidence supports it. *Watson v. Prewitt*, 320 S.W.2d 815, 816 (Tex. 1959); *King's Estate*, 244 S.W.2d at 661.

If evidence supports the implied findings of fact, we must uphold the trial court's judgment on any legal theory supported by the findings. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987); *Runnells*, 746 S.W.2d at 848. This is so regardless of whether the trial court articulates the correct legal reason for the judgment. *Harrington v. Railroad Comm'n*, 375 S.W.2d 892, 895 (Tex. 1964); *Fish v. Tandy Corp.*, 948 S.W.2d 886, 891-92 (Tex. App.—Fort Worth 1997, writ denied). We review the legal conclusions supporting the judgment to determine whether they are correct as a matter of law. *Lawrence v. Kohl*, 853 S.W.2d 697, 699 (Tex. App.—Houston [1st Dist.] 1993, no writ).

**DISCUSSION**

*Personal Jurisdiction*

A Texas court may exercise personal jurisdiction over a nonresident defendant if (1) jurisdiction is authorized by the Texas long-arm statute and (2) the exercise of jurisdiction is consistent with federal and state due process standards. *See Guardian Royal Exch. Assurance, Ltd.*

4

*v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991); *Transportacion Especial Autorizada, S.A. v. Seguros Comercial America, S.A.*, 978 S.W.2d 716, 719 (Tex. App.—Austin 1998, no pet.). The Texas long-arm statute grants Texas courts jurisdiction to the full extent permitted by the United States Constitution. *See Guardian Royal*, 815 S.W.2d at 226. Thus, the only limitations on Texas courts in asserting personal jurisdiction over a nonresident defendant are those imposed by the Due Process Clause of the Fourteenth Amendment. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 413-14 (1984). Due process requires a showing that the nonresident defendant has purposefully established "minimum contacts" with Texas and that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Guardian Royal*, 815 S.W.2d at 230-31.

Although the jurisdiction of Texas courts is always dependent on the defendant's having some minimum contacts with Texas, the requisite extent of those contacts varies depending on the type of *in personam* jurisdiction sought to be imposed. Thus, the United States Supreme Court has refined the minimum-contacts analysis into specific and general jurisdiction. *See Guardian Royal*, 815 S.W.2d at 227 (citing *Helicopteros*, 466 U.S. at 414-16).

To establish specific jurisdiction, the cause of action must arise out of or relate to the nonresident defendant's contact with the forum state and the conduct must have resulted from that defendant's purposeful conduct, not the unilateral conduct of the plaintiff or others. *See id.* (citing *Helicopteros*, 466 U.S. at 414 n.8, 417; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293-94, 298 (1980)). Thus, in analyzing minimum contacts for purposes of Texas courts' specific

5

jurisdiction, we focus on the relationship among the nonresident defendant, the forum, and the litigation. *See id.* (citing *Helicopteros*, 466 U.S. at 414; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)). In an effort to ensure compliance with the federal constitutional standard, the Texas Supreme Court has designed its own formula for specific jurisdiction:

(1)  The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

(2)  The cause of action must arise from, or be connected with, such act or transaction; and

(3)  The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*Schlobohm*, 784 S.W.2d at 358 (citing *O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex. 1966)).

An assertion of general jurisdiction compels a more demanding minimum-contacts analysis than an assertion of specific jurisdiction and requires a showing of substantial activities within the forum state. *Id.* at 357. The cause of action need not arise from or relate to the nonresident defendant's purposeful conduct within the forum state, but there must be "continuous and systematic contacts" between the nonresident defendant and the forum state. *See id.* (citing *Helicopteros*, 466 U.S. at 414-16). The ultimate test of minimum contacts for both general and specific jurisdiction is whether the defendant purposefully availed itself of the privilege of conducting activities in Texas, thereby invoking the benefit and protection of Texas laws. *Id.* at 357-58. This requirement ensures that a nonresident defendant will be haled into court only as a

6

result of its intentional activities, so that it is reasonable for the nonresident defendant to expect the call of a Texas court. *Guardian Royal*, 815 S.W.2d at 226; *Schlobohm*, 784 S.W.2d at 357-58.

### Burden of proof

In Texas, a plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the provisions of the long-arm statute—allegations sufficient to show the requisite minimum contacts with the forum state. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d at 793 (citing *McKanna v. Edgar*, 388 S.W.2d 927, 930 (Tex. 1965)). A defendant who challenges a court's exercise of personal jurisdiction through a special appearance carries the burden of negating all bases of personal jurisdiction that the plaintiff has alleged. *See Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985); *see also Scott v. Huey L. Cheramie, Inc.*, 833 S.W.2d 240 (Tex. App.—Houston [14th Dist.] 1992, no writ).

The Botters allege (1) that the ADA markets and sells amalgam-related products in Texas.[2] Specifically, the Botters allege that the ADA markets amalgam through its seal of approval[3] and through a pamphlet that refers to amalgam as "silver." The Botters also assert that the ADA sells "other materials," including the ADA journal, directly to Texas dentists and non-members

---

[2] The Botters originally alleged that the ADA sold amalgam. Their response to the special appearance does not allege that the ADA sold amalgam itself. Regardless, the ADA has negated that it has ever sold amalgam products. The district court found that the ADA had not sold amalgam products. After consideration of the record, we conclude that the district court's finding is substantiated.

[3] The ADA operates a seal of approval program. It tests dental products at the product maker's request and receives a fee to partially cover the cost of testing. Those products that the ADA approves are stamped with the ADA seal of approval. Some amalgam products carry the ADA seal of approval.

7

through its 800 number and website. They allege (2) that over 7,000 Texas dentists are members of the ADA and that in order to become a member of a local or statewide dental association, a Texas dentists must also become a member of the ADA. They allege (3) that every paying member of the ADA is subject to the ADA's code of ethics and that if a member disobeys the code, the member can be subject to dismissal from the association. They also allege that the ethical code "gag[s] dentists from warning patients of the toxicity of amalgams." The Botters allege (4) that the ADA conducts accreditation of Texas dental schools. They assert that the accreditation procedure requires physical visits to Texas by ADA staff members and that the ADA has substantial control over the curriculum in Texas dental schools through the accreditation process. The Botters allege (5) that the ADA operates and derives income from its "ADA seal of approval" program. The Botters assert that the amalgam products stamped with the ADA seal of approval are the "very substance of this litigation." The Botters allege (6) that the ADA administers and derives income from dental school entrance exams in Texas as well as from administering continuing education programs in Texas. They allege (7) that the ADA offers retirement and insurance packages to Texas dentists through its website and that the ADA has conducted advertising campaigns in Texas such as the National Oral Cancer Awareness campaign in Houston.

*Application*

As to specific jurisdiction, the Botters argue that because the ADA endorses some amalgam products through its seal of approval program, because it has distributed a pamphlet in Texas condoning the use of amalgam fillings, and because Texas members of the ADA must abide

8

by the ADA code of ethics, the ADA has committed *purposeful actions* in Texas that *caused this litigation*.[4]  *See Schlobohm*, 784 S.W.2d at 358.

The fact that the ADA tests and approves dental products that may be sold in Texas does not evidence a purposeful contact in Texas by the ADA.  As to the pamphlet that the ADA publishes about amalgam fillings, the record indicates that these pamphlets are only sent to dentists in Texas upon request, and not the general public.  Merely responding to requests for the pamphlet does not show a purposeful contact in Texas.  *See American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 809-10 (Tex. 2002).  As the supreme court has stated: "Jurisdiction based upon the effects of extra-territorial conduct within a particular forum is proper only when the extra-territorial conduct focuses upon the plaintiff residing in that forum."  *National Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 776 (Tex. 1995).  The Botters have not sufficiently alleged that the ADA's extra-territorial conduct was focused on the plaintiff in Texas.  However, even if either of these actions were purposeful contacts, neither caused the litigation in this case.  As the district court correctly found, there is no clear evidence in the record that the amalgam fillings that were put in Darla Botter's mouth carried the ADA seal of approval or that Darla Botter knew that some amalgam products carried the seal of approval.[5]  We conclude that the Botters have not sufficiently alleged that

---

[4] The Botters also allege that the ADA sells informational tools that support the use of amalgam.  As evidence of this, the Botters submitted a 2001 ADA catalog and current printouts from the ADA website.  For reasons explained later in this opinion, we will not use this evidence in our analysis.

[5] We have concluded after reviewing the record that this finding is not against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust.  *See In re King's Estate*, 244 S.W.2d at 661.  The only "evidence" that the amalgam product may have carried the ADA seal of approval is the Botters' assertion that their dentist said so in an affidavit, but the

9

the ADA, through its seal of approval program or pamphlet, acted purposefully in Texas and that those actions caused the present litigation.

The Botters also claim that because the Botters' dentist is a member of the ADA, the purposeful act of maintaining their dentist's membership caused this litigation because the Botters' dentist was subject to the ADA's code of ethics. Even assuming that the ADA's maintenance of memberships with Texas dentists is a purposeful act in Texas, as the district court correctly found, the ADA code of ethics does not deter dentists from warning patients about the possible side effects of amalgam when implanting the fillings. The language in the code of ethics only discourages dentists from *extracting* amalgam fillings *without cause*. Darla Botter sued the ADA because her dentist did not warn her about amalgam fillings when he placed them in her mouth. Thus, the fact that the ADA included the Botters' dentist as a member, and thereby subjected him to its code of ethics, could not have caused the present litigation.

The Botters have not sufficiently alleged that the ADA committed a purposeful act in Texas that caused this litigation. We affirm the district court's findings and affirm its conclusion that it does not maintain specific jurisdiction over the ADA.

With regard to general jurisdiction, it is our task to determine whether there are "continuous and systematic contacts" between the nonresident defendant, the ADA, and the forum state. *Schlobohm*, 784 S.W.2d at 357. "All contacts must be carefully investigated, compiled, sorted, and analyzed for proof of a pattern of continuing and systematic activity." *Id.* at 359. Thus,

affidavit was not in the record. Regardless, the Botters have not shown the ADA's maintenance of the seal of approval program is a purposeful contact in Texas.

10

we must scrutinize the Botters' allegations to determine whether the ADA's contacts establish a pattern of continuing and systematic activity.

The Botters allege that the accreditation of Texas dental schools, the administration of dental school entrance exams in Texas, the sale of products to Texas dentists (educational products, not dental supplies) over the internet and through an 800 number, the substantial ADA memberships here in Texas, the sale of the ADA journal to non-members, and the insurance and retirement packages it offers to Texas dentists, all taken together, show that the ADA maintains continuous and systematic contacts in Texas. None of the Botters' litany of contacts is clearly detailed in the record. Although it is true that a defendant bears the burden of negating the plaintiff's alleged bases of jurisdiction, the plaintiff must first show that what it alleges is actually a basis of jurisdiction. *See BMC Software Belgium, N.V.*, 83 S.W.3d at 793. The blanket statement that the ADA does all of the above does not present the court with enough information to properly investigate, compile, sort, and analyze the allegations for proof of a pattern showing continuing and systematic activity. *See Schlobohm*, 784 S.W.2d at 357. Plaintiffs had ample opportunity to conduct discovery in order to properly plead allegations showing jurisdiction under rule 120a, the rule governing special appearances, yet failed to do so. *See* Tex. R. Civ. P. 120(a). Instead, the Botters submitted printouts from the ADA's current website as its main evidence of the above alleged actions. As the information from the printouts is very general, this information does little to inform the Court about the continuous and systematic manner of the ADA's contacts in Texas. Furthermore, as the ADA argues, the information on the ADA website is not probative in our

11

jurisdictional analysis because it is not the same information that was on the website[6] when the Botters' action accrued. Texas authority implies that the relevant contacts are those up to the time of the injury. *See Scott v. Huey L. Cheramie, Inc.*, 833 S.W.2d 240, 242 (Tex. App.—Houston [14th Dist.] 1992, no writ); *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 45 (Tex. App.—Houston [14th Dist.] 1985), *writ ref'd n.r.e.*, 699 S.W.2d 199 (Tex. 1985). Therefore, even the scant information that is provided through the printouts from the current ADA website may not be considered by this court in our jurisdictional analysis.[7] The Botters also submitted a 2001 ADA catalog displaying educational tools that the ADA offers for sale. This information again is irrelevant to our determination because it does nothing to show what contacts the ADA had with Texas in 1998, when the action accrued. *See id.*

Our analysis of the Botters' proffered evidence leaves us to consider only the memberships that the ADA maintains in Texas. As the supreme court has recently noted: "An organization that mails national newsletters and notices of acceptance of dues to a member company in Texas has not purposefully established minimum contacts such that it could reasonably foresee being sued in the courts of this state." *National Indus. Sand Ass'n,* 897 S.W.2d at 774. Even though

---

[6] The ADA also argues that the website is not probative in an "interactivity" analysis for general jurisdiction for the same time-sensitivity reasons. Relying on our decision in *Daimlier Benz*, we agree. *See Daimlier Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707 (Tex. App.—Austin 2000, pet. dism'd w.o.j.).

[7] The Botters also submitted current website printouts from other organizations. We will not rely on the information from those websites for the same reasons we do not rely on the ADA website printouts. *See Scott v. Huey L. Cheramie, Inc.*, 833 S.W.2d 240, 242 (Tex. App.—Houston [14th Dist.] 1992, no writ); *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 45 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.), 699 S.W.2d 199 (Tex.1985).

in *NISA* there was only one member in Texas whereas, on our facts there are over 7,000, we do not find this difference persuasive. *See id.* The supreme court has adamantly stated that the number of contacts is not the determining factor in jurisdictional analyses; we must evaluate the quality of the contacts. *See Coleman*, 83 S.W.3d at 809-10. Here, members of the ADA pay membership dues to their local dental association which then sends a portion of the dues to the ADA. The ADA sends its members newsletters and a periodical. ADA members must abide by the ADA code of ethics. The Botters have not provided evidence that we can consider that reveals much more about the relationship. We conclude, that given the evidence we may consider, the nature of the contacts between member and organization in this case is similar to the nature of the contacts in *NISA*. We, therefore, reach the same conclusion—that these contacts are not continuous and systematic.

Finally, we are guided in our determination of general jurisdiction by the supreme court's recent decision in *Coleman*:

> General jurisdiction is premised on the notion of consent. That is, by invoking the benefits and protections of a forum's laws, a nonresident defendant consents to being sued there. When a nonresident defendant purposefully structures transactions to avoid the benefits and protections of a forum's laws, the legal fiction of consent no longer applies.

*Coleman*, 83 S.W.3d at 808. We note that the Botters have offered little evidence while the ADA submitted evidence that it has designed its structure so that it rarely deals directly with its members in their home state. It has structured a tri-partite system in which membership dues are paid to the local and state associations which then pass along a percentage of the dues to the ADA. The ADA has no offices in Texas. It does not share any employees with the local and state associations, and

13

it maintains no governance over them. The ADA explicitly admits that it has structured itself in this manner so as to avoid suit in states other than Illinois, where its offices are located. A defendant who structures its affairs to avoid personal jurisdiction may still be subject if it is "benefitted and protected by Texas law," but the Botter's have not sufficiently indicated in what way, regardless of the ADA's intent not to be subjected to Texas courts, the ADA is "benefitted and protected by the laws of Texas" through its alleged contacts with Texas. *Schlobohm*, 784 S.W.2d at 357-58. We conclude that the Botters have not pled allegations sufficient to confer general jurisdiction over the ADA.

Because we have concluded that the ADA does not have sufficient contacts with Texas to substantiate personal jurisdiction, we need not engage in a "traditional notions of fair play and substantial justice" analysis, the second prong of the personal jurisdiction test. *See International Shoe Co.*, 326 U.S. at 316.

## CONCLUSION

We affirm the district court's order granting special appearance to the American Dental Association.

_____

David Puryear, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: December 18, 2003

14