# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-08-00151-CV

---

### Verizon North Inc., Appellant

### v.

### Susan Combs, Comptroller of Public Accounts of the State of Texas; and Greg Abbott, Attorney General of the State of Texas, Appellees

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-06-001295, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

---

## O P I N I O N

This is a sales and use tax refund suit. Appellant Verizon North Inc. asserts that certain computer software it purchased is not tangible personal property in accordance with the Texas Tax Code and applicable regulations, and seeks a refund of Texas sales and use tax paid on the purchase of the software. The district court ruled that the software is taxable personal property. We affirm the judgment of the district court.

Verizon purchased "SAP R/3" computer software (the "Software") from SAP America, Inc. in June 1996 and paid $1,674,337.50 in Texas sales and use tax on the license to the Software. Thereafter, Verizon's affiliate, GTE Data Services, Inc., spent approximately $100 million to configure, modify, and customize the Software so that it would perform the business functions for which it was purchased. On April 13, 2006, Verizon filed suit against appellees—the Texas Comptroller and the Texas Attorney General—for a refund of a portion of the sales and

use tax paid in connection with the Software.  *See* Tex. Tax Code Ann. § 112.151 (West 2008).  On December 13, 2007, the district court denied Verizon's claims and rendered judgment for appellees. The court issued findings of fact and conclusions of law in support of the judgment.

Sales tax is imposed on each sale in the State of a "taxable item," *see id.* § 151.051 (West 2008), which is defined to include "tangible personal property," *see id.* § 151.010 (West 2008), which in turn is defined to include computer programs, *see id.* § 151.009 (West 2008). The issue, then, is whether the Software constitutes a "computer program" under the applicable statutory and regulatory definitions, in which case it is subject to sales and use tax.  The district court concluded that the Software is a computer program under the tax code.  Verizon contends that the district court's findings of fact do not support its judgment.

Section 151.0031 of the tax code defines a "computer program" as follows:

> "Computer program" means a series of instructions that are coded for acceptance or use by a computer system and that are designed to permit the computer system to process data and provide results and information.

*Id.* § 151.0031 (West 2008).  According to the district court's findings of fact, the Software "consisted of several CDs, on which were stored thousands of computer programs," and was, following installation, "ready for use" in accordance with SAP's standard installation procedures and capable of performing multiple functions.[1]  Furthermore, the trial court found that it would be

---

[1] In its findings of fact, the district court determined that following installation and prior to any changes by Verizon or GTE Data Services, the Software was capable of (1) accepting user input, (2) creating a user account in the Software, (3) giving security rights to user accounts, (4) creating and maintaining a data table, (5) creating a client, (6) running data queries, (7) posting entries to a general ledger, (8) governing the balancing of accounting ledger entries, (9) reversing accounting

2

possible to perform configuration and no additional programming and run the Software as a computer program. Verizon does not challenge any of the findings of fact made by the trial court. Absent a challenge to findings of fact, we accept them as true. *See Botter v. American Dental Ass'n*, 124 S.W.3d 856, 860 n.1 (Tex. App.—Austin 2003, no pet.) ("When a court issues findings of fact we are to assume that they are valid unless they are challenged by the appellant . . . ."). The district court's findings of fact sufficiently establish that the Software was coded for acceptance or use by a computer system and designed to permit the computer system to process data and provide results and information. Therefore, we conclude that, considering only the applicable statutory definition, the district court correctly concluded that the Software is a "computer program." *See* Tex. Tax Code Ann. § 151.0031.

While the district court's findings establish that the Software falls under the statutory definition of a "computer program," Verizon argues the court's findings do not establish that the Software falls under the applicable regulatory definition. Comptroller Rule 3.308(b)(1) states as follows:

> "Computer program" means a series of instructions sold as a completed program which are coded for acceptance or use by a computer system and which are designed to permit the computer system to process data and provide results and information.

---

ledger entries, (10) drawing objects to a screen, (11) sending data to a printer, (12) causing a disk to move, (13) sending commands to the operating system to read or write to a hard disk, (14) permitting access to the Software from remote locations, (15) employing client-server technology, and (16) employing Y2K technology.

34 Tex. Admin. Code § 3.308(b)(1) (2009) (Tex. Comptroller of Pub. Accounts, Computers—Hardware, Software, Services, and Sales). According to Verizon, the phrase "sold as a completed program," which does not appear in the statutory definition, is an additional requirement for a purchased computer program to be tangible personal property, and the Software does not meet this additional requirement. *See Perry Homes v. Strayhorn*, 108 S.W.3d 444, 448 (Tex. App.—Austin 2003, no pet.) ("The Comptroller is authorized to adopt rules that clarify and implement the legislation." (citing Tex. Tax Code Ann. § 151.021 (West 2008))).

Appellees assert that the Comptroller has consistently interpreted the phrase "completed program" to distinguish between computer programs and contract programming services, *see* 12 Tex. Reg. 4787 (1987), such that even "non-executable software source code" that requires substantial engineering effort to become an end-user product could constitute a "completed program" under rule 3.308(b)(1) when sold, *see* Tex. Comptroller Ltr. Rul. 9609L1435A10 (Sept. 3, 1996). Verizon counters that such interpretation has not been applied uniformly by the Comptroller and, moreover, contradicts the language of the rule. *See Texas Citrus Exch. v. Sharp*, 955 S.W.2d 164, 169-70 (Tex. App.—Austin 1997, no pet.) (addressing challenge to Comptroller's construction of its rule). According to Verizon, we must apply the common usage of "complete" as "possessing all necessary parts, items, components, or elements." We need not resolve this dispute, however, because even if we applied Verizon's desired construction—and thereby assumed that the term "completed program" refers to a computer program that is coded and designed such that no additional actions would be necessary for the program, upon installation, to operate as contemplated by the tax code section 151.0031 definition—we would conclude that the district court's findings

4

of fact are sufficient to support its judgment that the Software was a "computer program" under

the tax code.[2]

Verizon purchased the Software for its affiliate GTE Data Services's use, and

made extensive and costly modifications to the Software. Based on the Software not being

completely ready for the intended use by GTE as of the time of purchase, Verizon contends that the

district court's findings of fact do not support a judgment that the Software was "sold as a completed

program." In support of its contention, Verizon first relies on the following findings of the

district court:

> 37. GTE . . . made configurations, modifications, extensions and customizations to the Software in Texas.
>
> . . . .
>
> 48. As sold to GTE by SAP, the Software did not permit GTE to provide results and information from GTE's business functions for which the Software was purchased.
>
> 49. The configurations, modifications, extensions and customizations performed by Verizon North and GTE were necessary before the Software performed the business functions of GTE for which the software was purchased.
>
> 50. Verizon North and GTE performed the configurations, modifications, extensions and customizations so that the Software could perform[] GTE's business functions, for which the Software was purchased.

---

[2] There is no dispute that if we were instead to apply the Comptroller's construction of rule 3.308(b)(1), the Software would be a "computer program" under the rule.

5

Verizon argues that these findings of fact establish that the Software was not a "completed program" because "other necessary elements, components, and capabilities were missing and had to be created before the software was complete."

However, the district court's findings do not support this view. In its findings, the district court determined only that the Software was incomplete as to the specific functions *for which the Software was purchased*. The plain language of rule 3.308(b)(1) contemplates that software be *sold* as a completed program. 34 Tex. Admin. Code § 3.308(b)(1); *see Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999) ("Unless the rule is ambiguous, we follow the rule's clear language."). Thus, the focus is on the code and design of the software as sold, not on the intended use by the purchaser. Absent express statutory language to the contrary, it would not be reasonable to interpret the rule so as to make the application of sales and use tax turn on the subjective intent of the buyer. Rule 3.308(b)(1) contemplates that software be a completed program *as sold*, regardless of how the buyer intends to use the program and regardless of what modifications might be necessary in order to increase or modify its functions for the individual needs of the buyer. Consequently, the district court's findings of fact relied on by Verizon do not establish that the Software failed to comply with rule 3.308(b)(1).

Next, Verizon relies on the district court's rejection of a finding and conclusion proposed by appellees. The district court struck the following proposed finding of fact: "The Software is comprised of a series of instructions sold as a computer program which are coded for acceptance or use by a computer system and which are designed to permit the computer system to process data and provide results and information." In addition, the district court struck the

6

following proposed conclusion of law: "The Software is a 'computer program' under the definition of Comptroller Rule 3.308(b)(1)." Verizon contends that the district court's rejection of a finding of fact tracking rule 3.308(b)(1) and a conclusion of law that the Software complies with rule 3.308(b)(1) constitutes a conclusion that the Software does not comply with rule 3.308(b)(1).[3] It is true that we cannot imply an essential element when the district court rejects a finding of that element. *Compare* Tex. R. Civ. P. 299 ("[O]mitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment."), *with Vickery v. Commission for Lawyer Discipline*, 5 S.W.3d 241, 253 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("[T]he presumption of validity will not supply by implication a missing element that has been specifically 'requested.'"). However, if the findings the district court did make are sufficient to uphold the court's judgment, the rejected finding cannot be considered essential to the judgment and, therefore, need not be implied in the first place. *See Schismatic & Purported Casa Linda Presbyterian Church v. Grace Union Presbytery, Inc.*, 710 S.W.2d 700, 708 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (erroneous finding not reversible error if not essential to disposition of case).

Even without a finding specifically so stating, several findings of fact by the district court indicate its determination that the Software was complete as sold:

---

[3] The district court also refused *Verizon*'s proposed finding of fact that stated, "As sold to GTE by SAP, the software was not a completed computer program," and proposed conclusion of law that stated, "The software is not a 'computer program' under the definition of that term in Comptroller Rule 3.308(b)(1)." *See Vickery v. Commission for Lawyer Discipline*, 5 S.W.3d 241, 253 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("[W]here the trial court has been specifically requested to make a particular finding in support of its judgment and it fails to do so, that failure is tantamount to a refusal.").

12. The Software was contained on several CDs, on which were stored thousands of computer programs.

. . . .

15. Verizon-authored documentation described the Software [as] "an off-the-shelf package."

. . . .

18. Following installation of the Software by SAP, the Software was "ready for use" in accordance with SAP's standard installation procedures.

. . . .

47. Verizon admitted that it would be possible to do zero computer programming and only configuration and run the Software as a computer program.

Moreover, the district court entered multiple findings of fact relating to the Software's capability—following installation and prior to any changes made by Verizon or GTE to the Software—to process data and provide results and information. *See supra* note 1. We consider these findings to be sufficient to establish that the Software was "sold as a completed program" in accordance with rule 3.308(b)(1). Whereas findings of fact 48, 49, and 50 provide that the Software was not complete with regard to Verizon's intended use, the above findings indicate that the Software was complete when sold for the use for which it was designed. As we have stated, rule 3.308(b)(1) contemplates that a computer program be a completed program *as sold*, regardless what modifications, extensions, and customizations that the purchaser deems necessary for its intended use of the program. *See* 34 Tex. Admin. Code § 3.308(b)(1).

8

We conclude that the district court's findings of fact are sufficient under both tax code section 151.0031 and Comptroller Rule 3.308(b)(1) to support the court's conclusion that the purchased Software is a "computer program" and, therefore, tangible personal property that is taxable. The judgment of the district court is affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop;
   Concurring Opinion by Justice Patterson

Affirmed

Filed:  May 22, 2009