

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-09-297-CV

DANNY MATEER AND                                                          APPELLANTS
JOAN MATEER

V.

CABOOL LEASE, INC.                                                          APPELLEE

------------

### FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

This is an interlocutory appeal by Appellants Danny Mateer and Joan Mateer from the trial court's order granting Appellee Cabool Lease, Inc.'s special appearance in a personal injury action filed by the Mateers.[2] For the reasons set forth below, we will affirm the trial court's order.

---

[1] *See* Tex. R. App. P. 47.4.

[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(7) (Vernon 2008).

## II. FACTUAL BACKGROUND

In 2006, Danny Mateer worked as a milk truck driver for Milk Transport Services, L.P. (MTS) and/or Western Dairy Transport, L.P. While Danny was pumping milk into a milk trailer, the trailer's valve shut on Danny Mateer's hand, severely injuring him. The Mateers filed a personal injury suit against several entities[3] and included a products liability cause of action against Cabool Lease, alleging that Cabool Lease had sold the allegedly defective milk trailer at issue to MTS.

## III. CABOOL LEASE'S SPECIAL APPEARANCE

Cabool Lease filed a special appearance and supporting evidence. The Mateers filed a response and supporting evidence, arguing that Cabool Lease had continuous and systematic contacts with Texas sufficient to subject Cabool Lease to the general jurisdiction of Texas courts and had the minimum contacts required to subject Cabool Lease to specific jurisdiction in Texas courts. The trial court held a hearing on Cabool Lease's special appearance and granted it. This interlocutory appeal followed.

## IV. REVIEW OF TRIAL COURT'S GRANTING OF SPECIAL APPEARANCE

In their sole issue, the Mateers argue that the trial court erred by granting Cabool Lease's special appearance

---

[3]... The Mateers' claims against these entities remain pending in the trial court.

2

## A. Standard of Review

Whether a trial court has personal jurisdiction over a defendant is a question of law, and we review the trial court's ruling on a special appearance de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). A trial court must frequently resolve fact questions before deciding the jurisdictional question and where, as here, the trial court does not enter express findings of fact and conclusions of law regarding its ruling on a special appearance, we infer all fact findings necessary to support the trial court's ruling. *Id.* at 794–95. When a reporter's record is included in the appellate record, as we have here, however, a trial court's implied findings may be challenged for legal and factual sufficiency. *Id.*; *TravelJungle v. Am. Airlines, Inc.*, 212 S.W.3d 841, 845 (Tex. App.—Fort Worth 2006, no pet.). Once it is determined that the trial court's findings are supported by sufficient evidence, or if the material facts are undisputed, the reviewing court decides as a matter of law whether those facts negate all bases for personal jurisdiction. *BMC Software*, 83 S.W.3d at 794–95.

## B. Undisputed Material Facts

The material facts relied upon by each side in support of, or in opposition to, Cabool Lease's special appearance are undisputed. Cabool Lease argued that the facts established that it was not subject to the jurisdiction of Texas courts, while the Mateers argued that the facts established that Cabool Lease was subject to the jurisdiction of Texas courts.

3

The undisputed facts presented by Cabool Lease establish that MTS has locations in Missouri, Kansas, Texas, and New Mexico. In 1998, MTS purchased twenty-seven bulk milk trailers—including the one that injured Mateer—from Cabool Lease in Cabool, Missouri. Cabool Lease did not control where MTS utilized the milk trailers that it purchased, nor did Cabool Lease service the milk trailers that it sold. Cabool Lease did not have any contact with the Mateers concerning the facts made the subject of this lawsuit. Cabool Lease is a Missouri company with its principal place of business in Cabool, Missouri; it has not been incorporated in any other state besides Missouri; it has not been authorized to do business in any other state besides Missouri; and it does not maintain a place of business anywhere except Cabool, Missouri. Cabool Lease is not a corporate entity formed under the laws of Texas, and it does not maintain a registered agent for service in Texas. Cabool Lease has no employees in Texas and does not regularly recruit Texas residents to work for Cabool Lease; it does not maintain a place of business in Texas and does not have any offices or other facilities in Texas; it does not own any real or personal property in Texas; it does not maintain any bank accounts or post office boxes in Texas; it does not pay any taxes to any local or state taxing authorities in Texas; it does not market or ship any products to individuals or corporations in Texas; it does not operate a website in order to promote its business; it does not have a telephone number in Texas; it does not send sales or marketing brochures to people or corporations in Texas; it does not have company meetings

4

in Texas; it does not purposefully advertise in or direct marketing efforts to Texas with an intent to solicit business from Texas; it does not advertise in any Texas newspapers; it has never before been involved in a lawsuit in Texas; and it has never had an occasion outside of this lawsuit to call anyone in Texas or receive phone calls from Texas.

The undisputed facts presented by the Mateers establish that from 1998 to the present, ninety percent of Cabool Lease's business has consisted of leasing and financing equipment such as milk trucks and milk trailers to entities affiliated with Cabool Lease, such as MTS and Western Dairy.[4] Both MTS and Western Dairy are registered to do business in Texas, maintain registered agents in Texas, and maintain facilities of operation in Texas. MTS operated a total of eight facilities from 1998 through 2006, with two facilities located in the Texas cities of Stephenville and El Paso. During the late 1990s, Cabool Lease leased to or financed for MTS approximately seventy-five milk trucks and trailers for use in its eight facilities, including those facilities located in Stephenville and El Paso. In or about 2007, Western Dairy purchased the trucks and operation of MTS. Cabool Lease continues to lease milk trailers to Western Dairy, which continues to operate from the same facilities that had been operated by MTS, including the Stephenville and El Paso locations, and Western Dairy continues to make up roughly ninety percent of Cabool

---

[4] The Mateers concede in their reply brief that they do not attempt to base jurisdiction on any type of piercing the corporate veil theory; hence, only Cabool Lease's contacts with Texas are relevant to our analysis.

Lease's customer base. Cabool Lease's president is also the president of MTS, and Cabool Leases's president admitted in his deposition that he anticipated that some of the milk trailers that Cabool Lease sold to MTS might be used in one of MTS's Texas facilities.

### C. Trial Court's Implied Finding of No Minimum Contacts Is Supported by the Evidence

We need not undertake a detailed specific jurisdiction and general jurisdiction analysis because here the trial court's implied finding that Cabool Lease simply had no contacts at all with the State of Texas of the sort that will support jurisdiction over Cabool Lease in Texas courts is supported by the undisputed special appearance evidence. The contacts pointed to by the Mateers do not, as a matter of law, support specific or general jurisdiction by Texas courts over Cabool Lease. For example, the Mateers argue that Cabool Lease's conduct in leasing or selling milk trailers and trucks to MTS for a decade constituted continuous and systematic contacts with Texas. But the sales occurred and the leases were executed in Missouri, not Texas. And the fact that MTS, a third party, does business in Texas does not convert Cabool Lease's conduct in Missouri into doing business in Texas. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005) (explaining that only the defendant's contacts with the forum count, not the unilateral activity of another party or third person, like MTS here); *TravelJungle*, 212 S.W.3d at 846 (same); *Karstetter v. Voss*, 184 S.W.3d 396, 403 (Tex. App.—Dallas 2006, no pet.)

6

(same). The Mateers also point out that Cabool Lease placed the allegedly defective milk trailer into the stream of commerce with the expectation that it would enter Texas and be used in Texas by Texas residents. As evidence of this expectation, the Mateers rely on the deposition testimony of Cabool Lease's president that he anticipated that the milk trailers sold to MTS might be used at MTS's Texas locations. As a matter of law, placing a product into the stream of commerce with awareness that the product might end up in a particular state is not the type of purposeful contact with Texas that will support Texas courts' exercise of personal jurisdiction. *See CMMC v. Salinas*, 929 S.W.2d 435, 438 (Tex. 1996) (stating that a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state); *see also See Exito Electronics, Co. v. Trejo*, 166 S.W.3d 839, 855 (Tex. App.—Corpus Christi 2005, no pet.) (holding that mere knowledge that product would ultimately reach Texas, when coupled with the deliberate structuring of business to avoid purposeful contact with Texas, is insufficient in itself to constitute minimum contacts that would trigger specific jurisdiction); *Botter v. Am. Dental Ass'n*, 124 S.W.3d 856, 864 (Tex. App.—Austin 2003, no pet.) (holding that the fact that the ADA tests and approves products that may be sold in Texas does not evidence a purposeful

7

contact with Texas).[5] The Mateers also point to the fact that Cabool's president was also the president of MTS and traveled to Texas for an MTS meeting. Because, as mentioned earlier, piercing of any corporate veil between MTS and Cabool Leasing is not an issue, travel for MTS to Texas is not a contact by Cabool Leasing. *See Michiana,* 168 S.W.3d at 785. And, moreover, Cabool Lease's president testified that his role as president of Cabool Lease did not ever require him to travel because Cabool Lease "was just a financing institution and had no reason to travel anywhere else."

Thus, the trial court's implied finding that Cabool Lease had no contacts with Texas is supported by the special appearance evidence. *See BMC Software,* 83 S.W.3d at 794; *see also Asshauer v. Farallon Capital Partners, L.P.*, No. 05-05-01219-CV, 2008 WL 367619, at *10 (Tex. App.—Dallas Feb. 12, 2008, no pet.) (holding that defendant corporation lacked minimum contacts sufficient to support either specific or general jurisdiction when chairman's affidavit stated that corporation was a California corporation, did not maintain a registered agent for

---

[5]... In a post-submission letter brief, the Mateers argue that the Texas Supreme Court's recent decision in *Spir Star AG v. Kimich* mandates a holding that specific jurisdiction exists over Cabool Lease in Texas. No. 07-0340, 2010 WL 850151, at *1 (Tex. Mar. 12, 2010). Spir Star AG, however, intentionally targeted Texas as the marketplace for its products and established a distributorship in Texas for that purpose. *Id.* As discussed above, Cabool Lease did not intentionally target Texas as a marketplace; Cabool Lease did not establish a distributorship in Texas. The facts in *Spir Star AG* are not analogous to the facts here.

service of process in Texas, did not maintain a place of business in Texas, had no employees in Texas, and did not own or lease real property in Texas).

We therefore hold that the trial court did not err by granting Cabool Lease's special appearance. Accordingly, we overrule the Mateers' sole issue.

## V. Conclusion

Having overruled the Mateers' sole issue, we affirm the trial court's order granting Cabool Lease's special appearance.

SUE WALKER<br>
JUSTICE

PANEL: LIVINGSTON, GARDNER, and WALKER, JJ.

DELIVERED: April 15, 2010