**AFFIRMED and Opinion Filed December 3, 2021**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00232-CV**

**ROSE TRADING, LLC, Appellant**
**V.**
**WEI WEI AND BRIAN HUNTER, Appellees**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-12859**

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Carlyle
Opinion by Justice Carlyle

Rose Trading, LLC appeals the trial court's order sustaining Brian Hunter's special appearance and dismissing all claims against Mr. Hunter for lack of jurisdiction. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

Rose is a Texas-based entity that acquired shares in foreign entity Acapella Holdings, Ltd., in exchange for brokering Acapella's financing. According to Rose, Texas attorney Wei Wei partnered with and represented Rose in its dealings with Acapella.

Mr. Hunter, Acapella's majority shareholder and manager, sent Acapella's shareholders a letter in December 2018 notifying them of a contingent tender to

purchase all of the company's outstanding shares at a price that would ensure shareholders received a minimum $500 profit per share. Mr. Hunter requested that all shareholders sign a declaration agreeing to tender their shares to facilitate the transaction, and Rose complied.

In April 2019, Mr. Hunter sent another letter informing shareholders that he expected the sale to close within the next thirty to sixty days. And, according to Rose, Mr. Hunter represented in a separate email that the transaction would close on June 20. In July, Mr. Hunter sent another update stating that the "transaction was finalized," that he was "working on the final closing details," and that "it may take up to two weeks" to finish the closing documentation, after which funds could be dispersed. When funds were not disbursed within that time frame, Rose began questioning the legitimacy of the transaction.

On September 12, Mr. Hunter sent Rose a letter, ostensibly in response to "disparaging remarks" Rose had made to Mr. Hunter's business associates. He stated that, under the Acapella shareholder agreement, he intended to levy Rose's shares to cover the costs "associated with reputational harm, legal proceedings, [and] actual interference with" Acapella's business. He also said he did not intend to respond to any further communications from Rose.

Meanwhile, according to Rose, Mr. Hunter had covertly engaged Mr. Wei to act as a broker in the sale of Acapella, as well as in other collateral transactions. Rose

sued Mr. Wei on September 17, alleging he violated fiduciary duties to Rose by usurping its corporate opportunities with Acapella, by refusing to disclose information he learned about the Acapella sale, and by taking an interest adverse to Rose.

On October 8, Mr. Hunter sent another update stating that, despite delays caused by "the escalated violence in Hong Kong and Chinese Autumn holidays," he anticipated making distributions to shareholders later that week. Mr. Hunter referred vaguely to the dispute between Rose and Mr. Wei as "an ongoing issue between the brokers on the transaction - where former partners of the brokers for the sale of Acapella are suing the brokers themselves for part of the closing fee." He explained that, while he did not consider it "an Acapella issue," the closing could be jeopardized if "sensitive information" surrounding the transaction were released as a result of the litigation.

On October 14, Rose sent Acapella board members a letter alleging that Mr. Hunter had told other investors the sale proceeds could be distributed within a "day or two" if Rose settled its lawsuit against Mr. Wei. Thus, Rose deduced, the sale had already closed, and Mr. Hunter was holding the shareholder distribution hostage to force Rose to drop its claims against Mr. Wei. A few days later, Rose filed its First Amended Petition, adding Mr. Hunter as a defendant and asserting claims for breach of fiduciary duty, economic duress, money had and received, and conversion.

Although Rose alleged Mr. Hunter made false statements in his various updates about the status of the sale, the premise of each of its claims against Mr. Hunter was that he, as part of a conspiracy with Mr. Wei, wrongfully withheld Rose's share of the proceeds following the sale.

Mr. Hunter filed a verified special appearance challenging jurisdiction, stating that he was a Canadian resident at all relevant times, that he never conducted individual business or entered into a contract in an individual capacity in Texas, and that he never traveled to Texas for purposes of conducting individual business in connection with the events at issue in Rose's First Amended Petition. Rose responded with an affidavit alleging for the first time that Mr. Hunter affirmed the truth of his shareholder updates, and thus their alleged misrepresentations, while at a meeting with Rose in Dallas. Mr. Hunter replied that Rose's new jurisdictional allegation, in addition to being untrue, did not support jurisdiction, because Rose's claims were not connected to any alleged misrepresentations leading up to the Acapella sale.

The trial court held a hearing on the special appearance, at which an associate judge presided. At the end of the hearing, the associate judge invited Rose to file a letter brief explaining how its new allegation of misrepresentations at the Dallas meeting established jurisdiction, given the specific claims asserted in the First Amended Petition. Rather than filing the additional brief as requested, however,

Rose filed a Second Amended Petition asserting a fraud claim based on the alleged misrepresentations.

Mr. Hunter moved to strike the Second Amended Petition as untimely, given that it was filed without leave two days after the special appearance hearing. But the associate judge denied that motion and deferred ruling on the special appearance:

> What I want to do is discover really and truly whether or not this Court has jurisdiction over Mr. Hunter and not -- not to make a decision based on the failings of a petition. And I know that if I do allow the second amended petition to come in, that it would be a surprise and prejudicial to Mr. Hunter. But, like I said, I just want to discover what the truth is, in fact. And so what I'm going to do is, I'm going to deny the motion to strike, but I am going to allow Mr. Hunter to respond to it as they did to the first amended petition.

Mr. Hunter appealed the associate judge's ruling for de novo review by the district judge. *See* TEX. GOV'T CODE § 54A.111(e); 54A.115. After conducting a hearing on the appeal, the trial court struck the Second Amended Petition, granted Mr. Hunter's special appearance, and dismissed Rose's claims against Mr. Hunter for lack of jurisdiction.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY STRIKING THE SECOND AMENDED PETITION

Rose first contends the trial court erred by striking its Second Amended Petition. We review the issue for abuse of discretion, determining whether the trial court acted arbitrarily or unreasonably, without reference to any guiding rules or

principles. *See Strange v. HRsmart, Inc.*, 400 S.W.3d 125, 131 (Tex. App.—Dallas 2013, no pet.).

With regard to timeliness, a plaintiff may freely amend its petition up to seven days before a special appearance hearing. *See* TEX. R. CIV. P. 63. If a plaintiff wishes to amend its petition within seven days of the hearing, it must obtain leave of court, which shall be given "unless there is a showing that such filing will operate as a surprise to the opposite party." *Id.* An amended petition filed without leave after a special appearance hearing is untimely, and it may not be considered when ruling on the special appearance. *See Invasix, Inc. v. James*, No. 05-19-00494-CV, 2020 WL 897243, at *5 (Tex. App.—Dallas Feb. 25, 2020, no pet.) (mem. op.), *overruled on other grounds by Steward Health Care Sys. LLC v. Saidara*, No. 05-19-00274-CV, 2021 WL 3707995, at *4 & n.8 (Tex. App.—Dallas Aug. 20, 2021, no pet.); *Botter v. Am. Dental Ass'n*, 124 S.W.3d 856, 860 n.1 (Tex. App.—Austin 2003, no pet.); *see also Frank A. Smith Sales, Inc. v. Atlantic Aero, Inc.*, 31 S.W.3d 742, 747 (Tex. App.—Corpus Christi 2000, no pet.) ("The meaning of the term 'pleadings' must be limited at least so as to exclude matters not filed prior to the special appearance hearing.").

Rose contends the trial court's hearing on Mr. Hunter's appeal qualifies as a special appearance hearing, because the trial court reviewed the associate judge's rulings de novo and heard arguments concerning the special appearance. From that

premise, Rose argues that, because it filed its Second Amended Petition more than seven days before the de novo hearing, its petition was timely, and the trial court lacked discretion to strike it. We disagree.

The trial court did not receive any additional evidence at the de novo hearing on Mr. Hunter's appeal, and Mr. Hunter's arguments on the special appearance at that hearing were tied to his argument that the associate judge erred by denying his motion to strike and refusing to rule on the special appearance. Under these circumstances, the special appearance hearing conducted by the associate judge, and not the trial court's de novo hearing on Mr. Hunter's appeal, is the relevant hearing or "trial" for purposes of Rule 63's amendment deadlines. To conclude otherwise would make it practically impossible for a specially appearing defendant to appeal an associate judge's decision to allow an untimely amendment—contravening the defendant's rights under government code sections 54A.111(e) and 54A.115.

Rose also contends that, even if it did not timely file its Second Amended Petition, the trial court abused its discretion by refusing to allow the amendment, because Mr. Hunter could not show he was surprised by Rose's allegations of fraud. Rose correctly points out that a trial court generally must grant a timely request for leave to amend, barring a showing of surprise or prejudice. *See* TEX. R. CIV. P. 63, 66. But Rose filed its petition two days *after* the special appearance hearing and without seeking leave to amend. Thus, the trial court did not abuse its discretion by

striking the petition. *See Invasix*, 2020 WL 897243, at \*5; *see also Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 297 (Tex. App.—Dallas 2009, no pet.) (trial court did not abuse its discretion by striking amended petition filed without leave); *Harmon v. Bank of West*, No. 2-02-00056-CV, 2003 WL 1564826, at \*2 (Tex. App.—Fort Worth March 27, 2003, no pet.) ("Rule 63 . . . requires a party desiring to file an amended pleading within seven days of trial to first request and obtain leave from the trial court. It does not appear, based upon the record before us, that Harmon requested leave from the trial court to file his first amended petition. Thus, he failed to comply with rule 63, and the trial court was within its discretion to strike the amended petition.").

### ROSE DID NOT ALLEGE SUFFICIENT FACTS TO ESTABLISH PERSONAL JURISDICTION

Rose next contends that, even if the trial court properly struck its Second Amended Petition, the allegations in its First Amended Petition sufficiently established personal jurisdiction. We review that issue de novo. *See Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). Because the trial court did not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment, as long as they are supported by the evidence. *Id.*

Texas courts may exercise personal jurisdiction over a nonresident only if: (1) the Texas long-arm statute permits, which is not at issue here; and (2) it is consistent with constitutional due process. *Retamco Operating, Inc. v. Republic*

*Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). Due process requires both that the defendant have sufficient minimum contacts in the state and that exercising jurisdiction would not offend traditional notions of fair play and substantial justice. *Id.* at 337–38.

To establish sufficient minimum contacts, a nonresident must purposefully avail itself of the privilege of conducting activities in Texas, thus invoking the benefits and protections of Texas law. *Id.* at 338. Whether the defendant's activities take place in or out of Texas, they must "justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Id.* Three principles guide our purposeful availment inquiry: (1) only the defendant's contacts with Texas are relevant, not the unilateral activities of others; (2) the defendant's contacts "must be purposeful rather than random, fortuitous, or attenuated"; and (3) the defendant must seek some advantage, benefit, or profit through its Texas contacts. *Id.* (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007)).

Sufficient minimum contacts may establish either general or specific personal jurisdiction. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016). General jurisdiction exists when a nonresident defendant's "affiliations with the State are 'so continuous and sytematic' as to render it essentially at home in the forum State." *Id.* (quoting *Daimler v. Bauman*, 571 U.S. 117, 127 (2014)). General jurisdiction may exist "even

if the cause of action did not arise from activities performed in the forum state." *Id.* (quoting *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010)).

Specific jurisdiction, in contrast, exists only if "the defendant's liability arises from or relates to the forum contacts," meaning there must be a substantial connection between the defendant's purposeful Texas contacts and the operative facts of the litigation. *See id.* at 52. "The operative facts are those on which the trial will focus to prove the liability of the defendant who is challenging jurisdiction." *Leonard v. Salinas Concrete, LP*, 470 S.W.3d 178, 188 (Tex. App.—Dallas 2015, no pet.). Thus, we consider what each of the plaintiff's claims "is principally concerned with, whether the contacts will be the focus of the trial and consume most if not all of the ligation's attention, and whether the contacts are related to the operative facts of the claim." *TV Azteca*, 490 S.W.3d at 52 (quotations and citations omitted).

Rose contends personal jurisdiction is established here because: (1) Mr. Hunter traveled to Texas at least seven times in the past six years; (2) in a meeting with Rose during one of those trips, he affirmed the truth of misrepresentations he made in investor updates sent to Rose in Texas; and (3) he conspired with Mr. Wei, a Texas resident, to defraud Rose in Texas. Although Rose does not specify whether it believes the trial court had general or personal jurisdiction over Mr. Hunter, we note that the seven trips Mr. Hunter made to Texas within six years do not establish

he is "essentially at home" in the state. *Id.* at 37. And Rose points to no other evidence suggesting Mr. Hunter had continuous or systematic contacts with Texas. We conclude the trial court correctly determined it lacked general personal jurisdiction over Mr. Hunter. *See id.*

As for specific jurisdiction, the Texas contacts Rose alleges are not sufficiently connected to the operative facts underlying its claims. *See id.* at 52. Rose did not assert a fraud claim in its First Amended Petition; instead, each of its claims sought to hold Mr. Hunter liable for wrongfully withholding Rose's share of the proceeds following the Acapella sale. Those claims have little, if anything, to do with whether Mr. Hunter misrepresented the status of the sale's closing at some point before then. Thus, the alleged misrepresentations did not confer specific jurisdiction over Mr. Hunter. *See id.*

Likewise, the alleged conspiracy with Mr. Wei did not confer specific jurisdiction over Mr. Hunter. "The mere existence or allegation of a conspiracy directed at Texas is not sufficient to confer jurisdiction." *Old Republic Nat'l Title Ins.*, 549 S.W.3d at 560; *accord Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) ("[W]e decline to recognize the assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state."). Rose provides no record

evidence of any actions Mr. Hunter took while in Texas to further the alleged conspiracy to withhold Rose's share of the sale proceeds.

Based on this record, the trial court did not err by sustaining Mr. Hunter's special appearance. We therefore affirm the trial court's order dismissing Rose's claims against Mr. Hunter for lack of jurisdiction.


/Cory L. Carlyle/

210232f.p05                     CORY L. CARLYLE
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ROSE TRADING, LLC, Appellant

No. 05-21-00232-CV      V.

WEI WEI AND BRIAN HUNTER,
Appellee

On Appeal from the 192nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-13-12859.
Opinion delivered by Justice Carlyle.
Justices Myers and Partida-Kipness
participating.

In accordance with this Court's opinion of this date, the judgment of the trial
court is **AFFIRMED**.

It is **ORDERED** that appellees Wei Wei and Brian Hunter recover their
costs of this appeal from appellant Rose Trading, LLC.

Judgment entered this 3rd day of December, 2021.